MONNIN, Admr., Appellant,

v.

FIFTH THIRD BANK OF MIAMI VALLEY, N.A., et al., Appellees.*

MURPHY, Exr., Appellant,

v.

FIFTH THIRD BANK OF MIAMI VALLEY, N.A., et al., Appellees.*

[Cite as *Monnin v. Fifth Third Bank of Miami Valley, N.A.* (1995), 103 Ohio App.3d 213.]

Court of Appeals of Ohio,
Second District, Miami County.

Nos. 93–CA–50, 93–CA–52.

Decided March 29, 1995.

On Reconsideration May 11, 1995.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 73 Ohio St.3d 1428, 652 N.E.2d 801.

214

216

*James E. Cross*, for appellant Romanus D. Monnin, administrator.

*Nicholas E. Bunch*, for appellant James Murphy, executor.

*Dale D. Cook* and *John E. Fulker*, for appellee Fifth Third Bank of Miami Valley, N.A., et al.

GRADY, Judge.

Plaintiffs Romanus D. Monnin, individually and on behalf of the estate of Marjorie Monnin, and James Murphy, individually and on behalf of the estate of Thomas Lewis, filed separate complaints alleging negligence, negligence *per se*, wrongful death and survival actions against Fifth Third Bank of Miami Valley, N.A., Fifth Third Bank of Cincinnati, Fifth Third Bankcorp, and Wells Fargo Alarm Services, arising from a bank robbery on August 28, 1990 in which Marjorie Monnin and Thomas Lewis were fatally injured. The trial court dismissed all claims for relief by summary judgment. We will affirm that order, except with respect to Murphy's wrongful death claim, alleging negligence by Fifth Third Bank of Miami Valley. The dismissal of that claim is reversed and it is remanded for trial.

I

Fifth Third Bank of Miami Valley owns and operates a branch in Pleasant Hill, Ohio. The branch formerly operated under other names and as a part of other banking entities. It is now a part of a multi-bank business owned by Fifth Third Bankcorp, a holding company that also owns Fifth Third Bank of Cincinnati.

When the Pleasant Hill branch was acquired by Fifth Third Bankcorp in March 1988, it had been subjected to two armed robberies in the past fifteen years, one in January 1988 and one in 1975. A pre-acquisition review by Bill Thompson, security director for Fifth Third Bank of Cincinnati, revealed that the Pleasant

Hill branch was not in compliance with the security training requirements established in the Federal Bank Protection Act of 1968.

Marjorie Monnin and Thelma Leonard were employees of the Pleasant Hill branch of the Fifth Third Bank of Miami Valley on August 28, 1990, when, at about 10:00 a.m., Shawn Michael entered the Pleasant Hill branch and asked for change for a $20 bill. He left after receiving his change. His actions while in the bank were suspicious to Leonard, and prompted her to write down Michael's auto license plate number.

About noon that same day Shawn Michael reentered the bank. This time he asked to open a savings account. Leonard proceeded to open the account for Michael, and he gave her his name, address, Social Security number and driver's license for the process. After several minutes at the new account desk with Leonard, Shawn Michael suddenly stood up and announced that he was holding up the bank and brandished a gun. This caused Leonard to plead to Michael that she knew his mother.

At this time, Monnin entered from the drive-through teller station and was instructed by Michael to lock the bank door. Thomas Lewis, a customer, had already entered the outer lobby of the bank, and Shawn Michael told Monnin to let Lewis in and to lock the door after him. Monnin complied with Michael's instructions. Michael then directed Leonard to empty the money from her cash drawer into a bag. Michael watched Leonard and instructed her not to activate the alarm. Michael also directed Monnin to empty the money from her drive-through drawer into his bag.

After the money had been emptied into Michael's bag, he ordered Leonard, Monnin and Lewis into the employees' lounge room at the bank. He shot Lewis, Monnin, and then Leonard, fatally wounding Lewis and Monnin and paralyzing Leonard. On September 13, after the robbery, Fifth Third Bank of Miami Valley announced that the Pleasant Hill branch would remain permanently closed for the safekeeping and protection of human life.

Actions for negligence, wrongful death, and survivorship were brought by the personal representatives of Marjorie Monnin and Thomas Lewis. The named defendants were Fifth Third Bankcorp, Fifth Third Bank of Cincinnati, Fifth Third Bank of Miami Valley, and Wells Fargo Alarm Systems.

The claims of both plaintiffs against Wells Fargo were dismissed without objection and are not a part of this appeal. The claim against Fifth Third Bank of Miami Valley arising from Monnin's death was dismissed because it is barred by workers' compensation coverage. That dismissal is not a part of this appeal. The remaining claims were dismissed by summary judgment upon a finding that

the defendants had no duty to the decedents because the shootings were not reasonably foreseeable. It is from that order that the plaintiffs appeal.

## II

Murphy presents a single assignment of error, which states:

"The trial court erred in granting defendant's motion for summary judgment as genuine issues of material fact existed."

Monnin presents three interrelated assignments of error, which state:

"The trial court erred to the substantial detriment of plaintiff/appellant in granting defendants' motion for summary judgment since genuine issues of material fact remain in dispute and defendants are not entitled to judgment as a matter of law.

"The trial court erred to the substantial detriment of plaintiff/appellant when it failed to properly apply the law of Ohio with regard to foreseeability, duty and negligence.

"The trial court erred to the substantial detriment of plaintiff to the extent it decided this case on the basis of Ohio law applicable to the occupant of premises."

### A

### *Premises Liability*

Plaintiffs contend that all the defendants are liable for the injuries sustained by their decedents on a theory of premises liability. The question under a premises liability analysis is whether any of the defendants, Fifth Third Bankcorp, Fifth Third Bank of Cincinnati, or Fifth Third Bank of Miami Valley, owed a duty to the plaintiffs, based on their ownership or occupancy of business premises, to protect their decedents from the criminal acts of a third party. Ownership or control is necessary to this theory of recovery.

In its summary judgment entry the trial court found that because neither Fifth Third Bank of Cincinnati nor Fifth Third Bankcorp occupied the Pleasant Hill branch bank premises, neither had a duty to prevent the harm concerned, and, therefore, neither was liable for the injuries that occurred on the bank premises.

■ Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. All evidence submitted in connection with a motion for

summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.

Murphy and Monnin argue that the defendants are liable as occupiers of the business premises where the injuries occurred.

"An *occupier* of premises for business purposes may be subject to liability for harm caused to such a business invitee by the *conduct of third persons* that endangers the safety of such invitee, just as such occupier may be subject to liability for harm caused to such invitee by any dangerous condition of those premises." (Emphasis added.) *Howard v. Rogers* (1969), 19 Ohio St.2d 42, 46, 48 O.O.2d 52, 55, 249 N.E.2d 804, 807.

For purposes of premises liability, the Restatement of Torts defines a "possessor" as "a person who is in occupation of the land with intent to control it * * *." Restatement of the Law 2d, Torts (1965) 170, Section 328E. Possession and control are therefore two required elements of premises liability. "The control necessary as the basis for tort liability implies the power and the right to admit people to the premises and to exclude people from it and the substantial exercise of that right and power." *Mitchell v. Cleveland Elec. Illum. Co.* (1987), 30 Ohio St.3d 92, 94, 30 OBR 295, 296, 507 N.E.2d 352, 354.

The quantum of control necessary for premises liability is one that is physical and actual, and not one that is merely legal or theoretical. The ability of the entity in control of the property to protect property or people from foreseeable harm triggers the duty. "Liability is an incident of occupation or control of the premises." *Beaney v. Carlson* (1963), 174 Ohio St. 409, 411, 23 O.O.2d 67, 68, 189 N.E.2d 880, 881.

There is no dispute that Fifth Third Bank of Miami Valley occupied and was in control of the premises of the Pleasant Hill branch when the killings occurred. To support a judgment against Fifth Third Bank of Cincinnati or Fifth Third Bankcorp, there must be some evidence that each had control over the decisions regarding security at the Pleasant Hill branch of Fifth Third Bank of Miami Valley, that this control was sufficient to exclude people from the Pleasant Hill premises, and that those other defendants were in fact exercising that power. *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 188, 26 OBR 160, 161, 497 N.E.2d 1118, 1120; *Mitchell v. Cleveland Elec. Illum. Co.*, 30 Ohio St.3d at 94, 30 OBR at 296, 507 N.E.2d at 354.

There is no evidence that Fifth Third Bankcorp or Fifth Third Bank of Cincinnati exercised the control necessary to these claims for relief, even construing the evidence in a light most favorable to the plaintiffs. Though reasonable minds could find that these corporate defendants were responsible for management of security, the record does not demonstrate that those responsibilities included the authority to admit or exclude persons from the Pleasant Hill premises or that such control was substantially exercised by them. Only Fifth Third Bank of Miami Valley was in control of the Pleasant Hill premises under the tests of *Wills* and *Mitchell.*

■ Our determination of the issue of premises liability requires us to affirm the judgment of the trial court dismissing the claims against Fifth Third Bankcorp and Fifth Third Bank of Cincinnati. It does not determine the claims against Fifth Third Bank of Miami Valley. However, only Murphy's claim as to that defendant survives because Monnin's claim is barred by workers' compensation coverage.

As an occupier of business premises, Fifth Third Bank of Miami Valley owed a duty to Thomas Lewis, its invitee, to use reasonable safeguards to protect him from harm at the hands of Shawn Michael during Michael's armed robbery of the bank. *Howard v. Rogers, supra.* The bank is liable for damages arising from Lewis's death if Shawn Michael's conduct was reasonably foreseeable to the bank. *Id.; Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 180, 472 N.E.2d 707, 710; *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 173, 543 N.E.2d 769, 772. It must also be shown that Lewis's death proximately resulted from the bank's deviation from a standard of conduct reasonably required by its duty of care. *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 613 N.E.2d 1014.

■ There is evidence that the Pleasant Hill branch of the Fifth Third Bank of Miami Valley had been robbed twice before, most recently about two and one-half years earlier. Reasonable minds could find that Fifth Third Bank of Miami Valley knew, or should have known, that an armed robbery could again occur at that location.

■ It is not necessary to show that Shawn Michael's particular robbery or his decision to employ violence as he did was foreseeable. An armed robbery is a crime that necessarily involves a significant risk of serious physical harm to its victims, since a threat of such harm is implicit in the crime and necessary to its success. Foreseeability of the crime implies foreseeability of the risk of harm. *Simpson v. Big Bear Stores Co.* (Dec. 30, 1993), Franklin App. No. 93AP–852, unreported, 1993 WL 540325, affirmed (1995), 73 Ohio St.3d 130, 652 N.E.2d 702.

■ A proximate cause of any given result is that cause which in the natural and continued sequence of events contributes to produce the result, and without which it would not have happened. 70 Ohio Jurisprudence 3d (1986) 97, Negligence, Section 37.

■ A proximate cause is not necessarily the sole cause of the result concerned, but may be one of two or more causes which run together to produce a given result or inflict an injury.

"The intervention of a responsible human agency between a wrongful act and an injury does not absolve a defendant from liability if that defendant's prior negligence and the negligence of the intervening agency co-operated in proximately causing the injury. If the original negligence continues to the time of the injury and contributes substantially thereto in conjunction with the intervening act, each may be a proximate, concurring cause for which full liability may be imposed. 'Concurrent negligence consists of the negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence, in producing a single indivisible injury.' *Garbe v. Halloran* (1948), 150 Ohio St. 476, 38 O.O. 325, 83 N.E.2d 217, paragraph one of the syllabus.

"In order to relieve a party of liability a break in the chain of causation must take place. A break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency which could or should have eliminated the hazard. *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 323, 58 O.O. 119, 130 N.E.2d 824, paragraph one of the syllabus; *Thrash v. U–Drive–It Co.* (1953), 158 Ohio St. 465, 49 O.O. 402, 110 N.E.2d 419, paragraph two of the syllabus. However, the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury." *Berdyck v. Shinde, supra,* 66 Ohio St.3d at 584–585, 613 N.E.2d at 1024–1025.

■ Thelma Leonard was an employee of Fifth Third Bank of Miami Valley and acted in the scope of her employment during the robbery. Any negligence on her part is chargeable to her employer, which is also chargeable with any negligence in instructing or directing her, if that negligence proximately caused Lewis's death.

Plaintiffs' expert Richard Cross testified in his deposition that Thelma Leonard's statement to Shawn Michael, that she knew his mother, was the kind of statement which raises a concern in the criminal that he can be identified and connected to his crime, increasing the prospect of violence by him and contributing to the shootings in this case.

Bill Thompson, the bank's security officer, testified in his deposition that the conduct of employees affects what happens during a bank robbery. Thompson stated that the bank's employees were instructed to avoid any action to "alienate a robber" or increase the risk of injury. However, Thelma Leonard testified that she had never been instructed to avoid using the name of a bank robber during a robbery or to avoid alerting him otherwise that she could identify him.

The foregoing evidence of Cross and Leonard, if believed, would allow a reasonable mind to conclude that Leonard's statement to Shawn Michael and the bank's failure to instruct her to avoid such acts were breaches of the bank's duty of care which, in cooperation with Shawn Michael's wrongful act, proximately resulted in the death of Thomas Lewis.

Michael's act was not negligent, but intentional. It was a conscious and responsible agency which could and should have eliminated any hazard to Lewis from the bank's breach of its duty of care. However, there is evidence that Michael's decision to shoot was not independent of the negligence of the bank and its employee, but was prompted by that negligence. In that event, Michael's act does not cut off the liability of Fifth Third Bank of Miami Valley, if it was negligent and its negligence proximately resulted in the shootings.

### B

*Negligence Per Se*

Both plaintiffs also challenge the trial court's failure to find that a violation of the provisions of the Federal Bank Protection Act of 1968 constitutes negligence *per se*. Plaintiffs argue that because Fifth Third Bank of Miami Valley failed to comply with the security training programs mandated by the Federal Bank Protection Act, the employees of Fifth Third Bank of Miami Valley were ignorant of how to properly conduct themselves during a robbery. Plaintiffs claim this ignorance proximately contributed to or caused the decedents' injuries.

Negligence *per se* is the violation of a legislative enactment which "imposes upon any person a *specific* duty for the *protection of others* " where "his neglect to perform that duty proximately results in injury to another * * *." (Emphasis added.) *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 372, 53 O.O. 274, 277, 119 N.E.2d 440, 443. As this court stated in *Zimmerman v. St. Peters Catholic Church* (1993), 87 Ohio App.3d 752, 756, 622 N.E.2d 1184, 1186, the essential concern in negligence *per se* cases is whether the statute or regulation addresses a specific duty, and whether the duty is one for the protection of others. Whether a duty is sufficiently "specific" depends on whether the particular obligation or requirement can be determined without the exercise of human judgment. *Id.* at 762, 622 N.E.2d at 1190.

■ The Bank Protection Act of 1968, Section 1881 *et seq.*, Title 12, U.S.Code, authorized a "federal supervisory agency," in this case the Comptroller of the Currency, to promulgate rules "establishing minimum standards with which each bank or savings and loan association must comply with respect to the installation, maintenance, and operation of security devices and procedures, reasonable in cost, to discourage robberies, burglaries, and larcenies and to assist in the identification and apprehension of persons who commit such acts." Section 1882(a), Title 12, U.S.Code.

The authority delegated does not include a mandate for the protection of bank employees and customers. The Comptroller's rules on minimum security devices and procedures, found in Section 21, Title 12, CFR, include several sections and subsections, yet only one subsection apparently addresses the issue of employee or customer safety. Section 21.4, captioned "Security procedures," states in part:

"(b) Contents of security programs. Such security programs shall * * *

"(9) Provide for training, and periodic retraining, of employees in their responsibilities under the security program, including the proper use of security devices and proper employee conduct *during and after a robbery*, in accordance with the procedures listed in Appendix B of this part." (Emphasis added.)

Appendix B is illustrative of the overall focus of the rules in that out of the ten points listed under Appendix B, "Proper Employee Conduct During and After a Robbery," only one mentions employee or customer safety. The section reads:

"With respect to proper employee conduct during and after a robbery, employees should be instructed:

"(1) To avoid actions that might increase danger to themselves or others."

The other provisions direct that employees take actions to activate the alarms, include "bait" money with the money given, and preserve evidence at the scene.

■ The overall purpose of the rules is to protect the assets and valuables stored in banks to the best degree possible and, in case of loss, to ensure that ample measures to facilitate recovery of the funds and apprehension of the culprit are taken. Even assuming *arguendo* that these rules were promulgated to impose a specific duty for the protection of others, they still could not be interpreted without reference to human judgment, rendering negligence *per se* inapplicable. *Zimmerman v. St. Peters Catholic Church*, 87 Ohio App.3d at 763, 622 N.E.2d at 1191. Under Section 21.3, which governs security devices, for example, subsection (b) lists several "considerations relevant to determining appropriateness" of security measures. These considerations must be weighed by the exercise of human judgment. A duty requiring the exercise of human

judgment is not "specific" enough for negligence *per se*. *Zimmerman*, 87 Ohio App.3d at 763, 622 N.E.2d at 1191.

 Further support for this position can be gleaned from the fact that there is no private right of action under the Bank Protection Act for plaintiff customers. *Sadler v. Citibank, N.A.* (C.A.2, 1991), 947 F.2d 642, 643. In arriving at this conclusion, the Second Circuit Court stated in a terse opinion that the "Bank Protection Act's purpose was 'reducing the rising number of robberies which have plagued banks' * * *." *Id.* "The act is not intended to protect individual depositors. Rather, it is designed to prevent theft that would deplete federal insurance funds and to aid law enforcement officials in apprehending perpetrators." *Id.*

Accordingly, we hold that the provisions of the Bank Protection Act of 1968 are not sufficient to warrant the application of the doctrine of negligence *per se* because they fail to meet the *Eisenhuth* test of imposing a "specific duty for the protection of others." *Eisenhuth v. Moneyhon*, 161 Ohio St. at 372, 53 O.O. at 277, 119 N.E.2d at 443. The doctrine of negligence *per se* is inapplicable here, and no duty and consequent breach thereof may be established in this fashion under the rules promulgated by the Comptroller pursuant to the Bank Protection Act of 1968.

## C

### *Wrongful Death and Survivorship*

 Actions for wrongful death and survivorship are statutory, and operate as exceptions to the common-law rule that death terminates all claims for relief that otherwise might be brought. "Wrongful death" and "survivorship" are not claims for relief, as such, but are statutory actions by which certain claims for relief may be brought.

 R.C. 2305.21 provides that an action for injury to the person or property of a deceased may be brought notwithstanding his death, *i.e.*, a "survivorship" action. Murphy brought this action, in part, on behalf of the estate of Thomas Lewis to recover for the pain and suffering which Lewis suffered as a result of his shooting by Shawn Michael, which Murphy claims proximately resulted from the negligence of Fifth Third Bank of Miami Valley. In order to maintain that claim, there must be some evidence of conscious pain and suffering by Thomas Lewis between the injury inflicted and his resulting death. *Flory v. New York Cent. Rd. Co.* (1959), 170 Ohio St. 185, 189, 10 O.O.2d 126, 128, 163 N.E.2d 902, 905; *Laverick v. Children's Hosp. Med. Ctr. of Akron* (1988), 43 Ohio App.3d 201, 202, 540 N.E.2d 305, 307; see, also, *Jones v. Wittenberg Univ.* (C.A.6, 1976), 534 F.2d 1203, 3 O.O.3d 311.

■ Murphy presented no evidence to contradict Leonard's testimony or the death certificate. The Certificate of Death lists as "instantaneous" the interval between death and the onset of the condition that caused the death, in this case a "penetrating gunshot wound to the head" which resulted in "brain destruction." In response to a question about whether Leonard knew Lewis had died after he was shot, Leonard responded "I believe I did know. There was no response at all from Tommie." The record therefore presents no genuine issue of material fact concerning the decedent's apparently immediate death, without any intervening period of consciousness. Accordingly, summary judgment on the survivorship claim was required by Civ.R. 56.

■ An action for wrongful death affords a civil remedy which compensates others for the death of a person caused by the wrongful act, neglect, or default of a third person. The action is created by statute, R.C. 2125.01, which provides, *inter alia:*

"No action for the wrongful death of a person may be maintained against the owner or lessee of the real property upon which the death occurred if the cause of the death was the *violent unprovoked act* of a party other than the owner, lessee, or a person under the control of the owner or lessee, unless the acts or omissions of the owner, lessee, or person under the control of the owner or lessee constitute *gross negligence.*" (Emphasis added.)

Murphy's claim for relief alleged that Lewis's death was caused by the negligence of the owners and/or operators of the premises where the shooting took place. The trial court dismissed the claim, granting the defendants' motion for summary judgment upon a finding that the owner of the premises was not negligent.

■ The provision of R.C. 2125.01 quoted above operates to bar a wrongful death action brought against the owner or operator of a premises for a death caused by the violent act of a third person while on the premises unless (1) the *cause* proximately resulted from the gross negligence of the owner or operator, or (2) the cause was *provoked* by the owner or operator's act or omission.

■ Gross negligence is the "want or absence of slight care and diligence." *Payne v. Vance* (1921), 103 Ohio St. 59, 66, 133 N.E. 85, 87. There is nothing in the record which reasonably supports a finding that the cause of Thomas Lewis's death, the shot fired by Shawn Michael, proximately resulted from gross negligence on the part of Fifth Third Bank of Miami Valley or its agents or employees.

■ To "provoke" is: "To excite; to stimulate; to arouse; to irritate, or enrage." Black's Law Dictionary (5 Ed.1990) 1225. Whether provocation has

occurred looks to the act which is alleged to be provocation and to the result it creates, not to the purposes or motivation of the person who offers the alleged provocation. Thus, the provocation may be intentional or it may be inadvertent. R.C. 2125.01 expresses no restriction as to either kind for a wrongful death action founded on premises liability. Therefore, the act or acts which provoke the cause of death may be negligent as well as intentional for purposes of R.C. 2125.01.

There is evidence in the record from which reasonable minds could find that when Shawn Michael shot Thomas Lewis he was not unprovoked but was acting out of an excited state of mind brought about by a fear that he would be identified by Thelma Leonard because, as she had told him, she knew his mother. In other words, Leonard's remark, while innocent of any malicious purpose, provoked Michael to act. He then shot Leonard, and Monnin and Lewis as well. Leonard's act is chargeable to her employer, Fifth Third Bank of Miami Valley, which owned and operated the premises on which the shooting took place. Therefore, we find that the trial court erred when it dismissed Murphy's claim for wrongful death against Fifth Third Bank of Miami Valley.

Whether Thelma Leonard's statement provoked Shawn Michael to shoot his prisoners is a question of fact for the jury. If the jury finds provocation, the bar provided by R.C. 2125.01 falls. The jury must then consider whether Thelma Leonard was negligent when she made the statement to Shawn Michael and/or whether her employer was negligent if it failed to instruct her not to make such statements. With respect to Thelma Leonard's negligence, if any, the applicable standard of care remains one of ordinary care, but one affected by the circumstances of the sudden emergency with which she was confronted. See 70 Ohio Jurisprudence 3d (1986), Negligence, Section 26.

### III

On the foregoing discussion of the facts and the law applicable to them, we overrule appellant Romanus Monnin's assignments of error and affirm the judgment of the trial court dismissing his claims for relief arising from the death of Marjorie Monnin.

We also overrule the single assignment of error of appellant James Murphy as it pertains to his claims for relief arising from the death of Thomas Lewis brought against appellees Fifth Third Bankcorp and Fifth Third Bank of Cincinnati, and against Fifth Third Bank of Miami Valley on a survivorship claim, and we affirm the judgment of the trial court dismissing those claims for relief.

We sustain Murphy's assignment of error to the extent that it concerns his action for wrongful death against Fifth Third Bank of Miami Valley for negligently causing the death of Thomas Lewis, and reverse the judgment of the trial

court dismissing that claim and remand the case to the trial court for further proceedings concerning it.

*Judgment accordingly.*

BROGAN, P.J., and WOLFF, J., concur.

## ON RECONSIDERATION

Decided May 11, 1995

*Per Curiam.*

Plaintiff-appellant Romanus D. Monnin has timely applied for reconsideration of our decision of March 29, 1995, which affirmed a summary judgment dismissing his claims for relief against defendants-appellees Fifth Third Bankcorp, Fifth Third Bank of Cincinnati, and Fifth Third Bank of Miami Valley. Those claims were for the wrongful death of his spouse, Marjorie Monnin. His appeal was limited to dismissal of his claims against Fifth Third Bankcorp and Fifth Third Bank of Cincinnati. Monnin did not appeal from the summary judgment in favor of Fifth Third Bank of Miami Valley, conceding that it was barred by workers' compensation coverage.

Monnin argues in his application for reconsideration that we applied an incorrect, or overly strict, standard for determining whether Fifth Third Bankcorp and Fifth Third Bank of Cincinnati were sufficiently in control of the premises where Marjorie Monnin was killed to satisfy the requirements for premises liability. Monnin cites and relies on *Fryberger v. Lake Cable Recreation Assn.* (1988), 40 Ohio St.3d 349, 533 N.E.2d 738.

In *Fryberger*, a swimmer was injured when he dove into a lake owned and operated by a recreation association maintained by owners of residential property around the lake. The injured party was visiting one of the owners, who gave him permission to swim in the lake. The injury occurred when the guest dove from a dock on his host's property. The recreation association was granted summary judgment dismissing it as a defendant because it was not in control of the locations where the injuries occurred, a dock maintained by the homeowner. The Supreme Court reversed, holding that the recreational association was in sufficient control of the premises where the injury occurred because (1) it had the power to admit or exclude persons from using the lake, and (2) it took some steps to control use of the lake, though none to control the use of docks owned by its residents.

The issues related to premises liability in *Fryberger* are not addressed in the syllabus of the case. Nevertheless, we believe that the decision stands for the proposition that one who has the power to admit or deny access to a premises has a sufficient degree of control over it to create liability to another person who is

admitted to the premises and injured by a dangerous condition that exists there. The decision also supports the notion that some substantial efforts on the part of an owner to limit exposure to the risk is evidence sufficient to prevent a summary judgment on the issue of liability.

The facts of *Fryberger* are sufficiently different from the facts in this case to limit its applicability. Indeed, *Fryberger* announces no new rule on control different from that in other cases. However, the analysis of the issues presented in *Fryberger* is instructive of the proper analysis to follow with respect to summary judgments on issues of this kind, and it prompts us to review again the basic considerations in this case.

A duty is an obligation created by law and imposed on one person to act for the benefit of another because of a relation between them. Injuries to the obligee which proximately result from the failure of the obligor to discharge a duty, a *breach* of duty, creates liability in the obligor to the obligee.

One who owns or occupies real property has a duty to those who enter on the property to protect them from a dangerous condition that exists there. That duty arises from the control or dominion over the property which the owner or occupier enjoys, which puts him in a position superior to others to both know of the condition and to protect those who enter on the property from the risk of harm from it.

An owner or occupier of real property who may reasonably foresee that those who come onto his land may be harmed by a dangerous condition that exists there may fulfill his duty of protection in various ways. He may remove the risk of harm by curing the danger. Or, he may warn those who enter of the danger so that they may protect themselves from it. Or, he may limit or restrict entry onto his land by those who may be injured by the danger so as to avoid their exposure to the risk, the situation in *Fryberger*. The failure to do those things, when they are in his power to do, may be a breach of the owner's duty to the person injured which creates liability when that failure proximately results in the injuries concerned.

In this case Marjorie Monnin suffered harm from an armed robbery. There is evidence that the risk of that harm was reasonably foreseeable. Those who owned and/or occupied the premises had a duty to Marjorie Monnin to protect her from that risk. The harm she suffered is evidence that they breached that duty. In order to prove liability, her personal representative in a wrongful death claim must present operative facts which demonstrate that the person or persons whom he would hold liable for her injuries had sufficient dominion or control over the property to protect Marjorie Monnin from the risk of the harm she suffered.

It is undisputed that any claim which Marjorie Monnin might have against Fifth Third Bank of Miami Valley for breach of its duty to protect her from the harm she suffered is barred by workers' compensation. The real dispute with respect to her claim for relief, and the focus of her application for reconsideration, is the alleged liability of Fifth Third Bankcorp and Fifth Third Cincinnati. Either may be liable if it had sufficient control of the premises to protect her from the risk of the harm that she suffered.

Fifth Third Bankcorp is a holding company. It owns Fifth Third Bank of Miami Valley and Fifth Third Cincinnati, which is its "flagship" bank. It also owns other operating banks in Ohio. These acquisitions occurred through a series of mergers and buyouts which the banking industry has experienced, perhaps more so than most others, in the last decade or so.

Fifth Third Bank of Miami Valley evolved from mergers and acquisitions of several predecessor banking entities. In 1985, a merger between the Western Ohio National Bank Company and Piqua National Bank created Heritage National Bank and Trust. This entity then merged with Miami Citizens National Bank, creating the Citizens Heritage Bank, N.A., which was acquired by Fifth Third Bankcorp in 1988. The name was changed to Fifth Third Bank of Miami Valley, N.A. in 1989.

The premises of the Pleasant Hill branch where Marjorie Monnin was killed is owned and operated by Fifth Third Bank of Miami Valley. That entity is wholly owned by Fifth Third Bankcorp. That holding company, and its flagship bank, Fifth Third Bank of Cincinnati, may be liable on the wrongful death claim if they sought to *occupy* the premises by directing the activities of Fifth Third Bank of Miami Valley with respect to security at its Pleasant Hill branch.

The mergers and buyouts which the corporate world has experienced typically produce changes in the organizational structure of the businesses concerned. Changing organizational arrangements often blur lines of authority and confuse the issue of responsibility. Vertical combinations, in which a larger organization acquires a smaller organization in the same business, often raise the critical level of decision-making to a higher point in the new organization. The way in which operating decisions are made then differs according to the particular corporate culture concerned and may adjust as further reorganizations occur. These factors make the issue of "control" an elusive notion that varies according to the facts and circumstances involved.

The record contains the deposition testimony of William Kadel, President of Fifth Third Bank of Miami Valley at the time of the robbery, Norman Cathcart, security officer for Fifth Third Bank of Miami Valley at that time, Cathcart's predecessor, Jim Hemmert, and Bill Thompson, security officer for Fifth Third Bank of Cincinnati.

Kadel testified that after the merger of the Citizen's Heritage Bank with Fifth Third Bankcorp, Fifth Third Bank of Miami Valley continued to retain its own security officer, but sought instruction and advice from the parent corporation on security matters.

Bill Thompson testified that he is the security officer for Fifth Third Bank of Cincinnati and is charged with management of security for the entire group of banks owned by Fifth Third Bankcorp, which includes two hundred fifty-nine branches. Except for banks in Columbus and Toledo, security personnel at these affiliates do not "report" to him. However, they seek his guidance, and Thompson offers them recommendations, suggestions, and guidelines on security matters. He testified that if he suggested a correction or improvement, the security officer at an affiliate such as Fifth Third Bank of Miami Valley would follow it "in most situations." Thompson stated:

"I'm in charge (of security) for Fifth Third Bank of Cincinnati, and I provide guidelines and recommendations to affiliate security officers, who are in charge for their affiliate.

" * * *

"You have to understand that a certain amount of the responsibility for this security in that affiliate lies with that affiliate security officer. And we coordinate with him, make recommendations and try to work with that person to get compliance with our recommendations."

Thompson's testimony suggests that if he recommends that an affiliate bank replace its security officer, that is likely to happen.

Norman Cathcart testified that Bill Thompson "advises us and helps us if we need help" concerning security, and that "[w]e have sent memos telling him we have a problem, we want to get it corrected and get his approval, and seek his advice." For example, when an alarm system at another branch had to be replaced, "I sent all the estimates to (Thompson's staff) for their approval and evaluation." Cathcart stated that he relies on Thompson's office in significant security matters because "[t]hey have a staff and expertise." Cathcart stated that Thompson's staff assessed the security measures in place at the Pleasant Hill branch to confirm compliance with federal regulations, and that he relied on them to ensure compliance with federal regulations. Cathcart also testified that his responsibilities as security officer for Fifth Third Bank of Miami Valley included training employees in security matters.

Jim Hemmert testified that after the merger of the Citizens Heritage Bank into Fifth Third Bankcorp he sought Thompson's advice and guidance on security matters, as Thompson was in charge of security matters for all affiliates of Fifth Third Bankcorp, though he didn't "report" to Thompson. Hemmert testified that

he asked Thompson to " 'help me design, or tell me what you expect of your branches, what kind of program or operations do you run, and what does [*sic*] Fifth Third and you expect of a Security Officer in one of the affiliates?' I was asking him for his guidance."

Our opinion of March 29, 1995, distinguished between the "management" of security by Fifth Third Bankcorp and Fifth Third Bank of Cincinnati and the control of that responsibility by Fifth Third Bank of Miami Valley. Upon reconsideration, we believe that this distinction is insufficient to support a summary judgment on this record.

There is evidence that Fifth Third Bankcorp undertook to bring the security functions at its operating subsidiaries together under the direction of Bill Thompson, security officer for Fifth Third Cincinnati, its flagship bank. Security officers of subsidiaries such as Fifth Third Bank of Miami Valley were expected to follow those directions, even though they did not "report" to Thompson. Control of that aspect of its operation may, in that event, have been passed by Fifth Third Bank of Miami Valley to its parent organization and its flagship bank, with the approval and encouragement of those businesses. Therefore, while Fifth Third Bankcorp and Fifth Third Bank of Cincinnati did not perform security functions at the Pleasant Hill branch, nevertheless, there is evidence that they had control of that function sufficient to create a genuine issue of material fact as to whether they owed a duty to Marjorie Monnin to protect her from the risk of the harm which befell her on the premises and whether they breached that duty. There is evidence that they could have protected her by advising employees against provoking an armed robber to commit the violent acts that occurred here. The fact that they did not may demonstrate their lack of control, or it may demonstrate a negligent exercise of the control they possessed. That distinction is one for a jury.

This case, and the foregoing analysis, are similar to *Fryberger* in two important respects. There, the homeowners' association performed some actual functions related to safety and security. Here, Fifth Third Bankcorp and Fifth Third Bank of Cincinnati also performed security functions, which involve direction of the performance of those functions by a wholly owned subsidiary. In both cases the record presents genuine issues of material fact concerning duty, breach of duty, and proximate cause. In both cases summary judgment was therefore not warranted.

The trial court also granted summary judgments to these same two corporate defendants on James Murphy's wrongful death claims. Those summary judgments must also be reversed, for the reasons explained above.

Upon reconsideration, we vacate our prior decision of March 29, 1995, which overruled plaintiff-appellant Monnin's third assignment of error and plaintiff-

appellant Murphy's sole assignment of error with respect to their claims for wrongful death against Fifth Third Bankcorp and Fifth Third Bank of Cincinnati. The summary judgments in favor of Fifth Third Bankcorp and Fifth Third Bank of Cincinnati and against Monnin and Murphy on those claims are reversed, and the case is remanded to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

BROGAN, P.J., WOLFF and GRADY, JJ., concur.