[Cite as *Christian v. Wal-Mart Stores East, L.P.*, 2011-Ohio-3512.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| NOEL D. CHRISTIAN, ADMR., et al., | : | W. Scott Gwin, P.J. |
| | : | Sheila G. Farmer, J. |
| Plaintiffs-Appellants | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case No. 11CA002 |
| | : | |
| | : | |
| WAL-MART STORES EAST, LP, | : | O P I N I O N |
| et al., | | |
| | | |
| Defendants-Appellees | | |

CHARACTER OF PROCEEDING:            Civil Appeal from Holmes County
Court of Common Pleas Case No.
08CV136

JUDGMENT:            Affirmed

DATE OF JUDGMENT ENTRY:            July 13, 2011

APPEARANCES:

For Plaintiffs-Appellants            For Defendants-Appellees

ROBERT W. KERPSACK            PATRICK KASSON
Robert W. Kerpsack Co., L.P.A.            Reminger Co., L.P.A.
655 Metro Place South, Suite 255            Capitol Square Building
Columbus, Ohio 43017-5389            65 East State Street, 4th Floor
Columbus, Ohio 43215

*Edwards, J.*

{¶1}   Appellants, Noel Christian, individually and as the administrator of the estate of Civanna Christian, deceased, and Katie Lawrence appeal a summary judgment of the Holmes County Common Pleas Court dismissing their complaint for wrongful death, survivorship and emotional distress against appellee Wal-Mart Stores East, L.P.

STATEMENT OF FACTS AND CASE

{¶2}   During the afternoon of August 28, 2006, John Besancon drove his Hyundai Tiburon into the parking lot of the Millersburg, Ohio, Wal-Mart. Entering the parking lot, Besancon traveled in an east to west direction in front of the building, rapidly accelerating the vehicle. Witnesses observed Besancon maneuver the vehicle to avoid another vehicle and several pedestrians. Thereafter, Besancon drove the vehicle left of center into the eastbound lane, and onto the sidewalk in front of the building, striking and fatally injuring three-year-old Civanna Christian before crashing into the building. Witnesses heard the roar of the engine of Besancon's car before he struck Civanna, and reported that it sounded like he pushed the accelerator to the floor.  Civanna was thrown approximately 75 feet through the air.

{¶3}   Besancon said that he remembered nothing of the event and offered no explanation except that if he were in his right mind, he wouldn't have been going 45 or 50 mph in front of the store.  He was enlisted in the Marines and had left his base in North Carolina without permission several days before the tragic event.  He had previously served a deployment in Iraq. In July, 2006, while on maneuvers, he experienced a heat-related incident for which he received medical treatment, but was

not hospitalized. After the event on August 28, 2006, he claimed to have received combat related injuries while serving in Iraq. He also informed police and psychologists to whom he spoke that he had experienced various blackouts following the July, 2006, heat-related incident, including one while he was driving from North Carolina to Ohio days before August 28, 2006.

{¶4} Ron Thayer, an accident reconstructionist, analyzed the scene, taking measurements and photographs and performing speed and distance calculations. Thayer concluded that Besancon was traveling 48-55 mph at the time of the event, and the vehicle was accelerating throughout the incident, accelerating into Civanna with no attempt to brake. He concluded that the driver had at least some control over the car and was not passed out at the wheel.

{¶5} Following a criminal trial, a jury found Besancon guilty of aggravated vehicular homicide and vehicular homicide. The State elected to have Besancon sentenced on the aggravated vehicular homicide conviction. Besancon was sentenced to a term of imprisonment of three years and his driver's license and driving privileges were suspended for the remainder of his life. This Court affirmed the conviction on appeal. *State v. Besancon*, Holmes App. No 08-CA-002, 2008-Ohio-7014.

{¶6} Civanna was struck while walking with her mother, appellant Katie Lawrence, on the concrete pedestrian sidewalk adjacent to the asphalt parking lot in front of the store. Wal-Mart had marked the area with three red bollards in front of the store entrance, yellow "no vehicle" pavement markings, white crosswalk markings in front of the entrance crossing into the parking lot, double yellow lines for traffic, yellow "Fire Lane" markings close to the entrance, "Yield" markings painted in the traffic lanes

by the crosswalk, a yellow bollard in front of the crosswalk by the store entrance with a stop sign attached to it and a pedestrian crossing sign attached above the stop sign, and a 5 MPH speed limit sign posted in the traffic area separating the lot from the pedestrian sidewalk.

{¶7}   On August 27, 2008, appellants filed the instant action against appellee Wal-Mart Stores East, LP, Wal-Mart Real Estate Business Trust, Wal-Mart Stores East, Inc., Wal-Mart Stores, Inc., and several John Does. Appellants sought compensatory damages for the wrongful death of Civanna and the severe emotional distress of appellant Katie Lawrence.  On September 15, 2009, appellee filed a motion in limine to exclude the testimony of appellants' expert, John Messineo, P.E., and a motion for summary judgment on the issue of liability. By decision and judgment entry filed October 20, 2009, the trial court granted the motion for summary judgment.  On October 26, 2009, appellants voluntarily dismissed without prejudice the remaining defendants.

{¶8}   Appellants filed a notice of appeal to this Court.  This Court reversed the court's judgment excluding the deposition testimony of appellants' expert and remanded the case to the trial court.  *Christian v. Wal-Mart Stores East, LP*, Holmes App. No. 09CA014, 2010-Ohio-3040.

{¶9}   Following remand, the trial court found that reasonable minds could not conclude that appellee was grossly negligent in the design of the parking lot, proximately causing Civanna's death, nor could reasonable minds conclude that appellee breached a duty owed to a business invitee.  Appellants assign seven errors on appeal:

{¶10} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING, AS A MATTER OF LAW, THAT THE CONDUCT IN THE PRESENT CASE OF APPELLEE, WAL-MART STORES EAST, LP, DOES NOT CONSTITUTE GROSS NEGLIGENCE.

{¶11} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING, AS A MATTER OF LAW, THAT THE ERECTION OF A 6-INCH CURB BETWEEN THE WAL-MART PARKING LOT AND THE ADJACENT PEDESTRIAN SIDEWALK IN QUESTION WOULD NOT HAVE PREVENTED THE PEDESTRIAN/MOTOR VEHICLE COLLISION AT ISSUE IN THE PRESENT CASE.

{¶12} "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING, AS A MATTER OF LAW, THAT THE PEDESTRIAN/MOTOR VEHICLE COLLISION AT ISSUE IN THE PRESENT CASE WAS UNFORESEEABLE.

{¶13} "IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING, AS A MATTER OF LAW, THAT THE RECORD IN THE PRESENT CASE CONTAINS NO COMPETENT, CREDIBLE EVIDENCE THAT APPELLEE BREACHED A DUTY OF CARE TO APPELLANTS AND THEIR DECEDENT.

{¶14} "V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING, AS A MATTER OF LAW, THAT THE WAL-MART SIDEWALK/PARKING LOT AREA AT ISSUE IN THE PRESENT CASE WAS CONSTRUCTED IN COMPLIANCE WITH ALL APPLICABLE BUILDING AND DESIGN STANDARDS.

{¶15} "VI. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING, AS A MATTER OF LAW, THAT APPELLEE PROVIDED APPELLANTS AND THEIR DECEDENT 'WITH A SAFE WAY TO ENTER AND EXIT THE STORE.'

{¶16} "VII. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS, NOEL D. CHRISTIAN, ADMR., AND KATIE M. CHRISTIAN (AKA RABER AND LAWRENCE), IN GRANTING SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY IN FAVOR OF APPELLEE, WAL-MART STORES EAST, LP., AND AGAINST APPELLANTS."

{¶17} All of appellant's assignments of error are directed toward the propriety of the summary judgment entered by the court in favor of appellee and, are therefore, governed by the same standard of review.

{¶18} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ. R. 56(C) which provides in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is

made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶19} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates that the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

I

{¶20} In their first assignment of error, appellants argue that the court erred in granting summary judgment on the issue of whether appellee committed gross negligence in the design of their parking lot.

{¶21} R.C. 2125.01 provides in pertinent part:

{¶22} "No action for the wrongful death of a person may be maintained against the owner or lessee of the real property upon which the death occurred if the cause of the death was the violent unprovoked act of a party other than the owner, lessee, or a person under the control of the owner or lessee, unless the acts or omissions of the

owner, lessee, or person under the control of the owner or lessee constitute gross negligence."

{¶23} Appellants do not argue in this assignment of error that Besancon's act was not a violent unprovoked act, but only argue that reasonable minds could conclude that appellee committed gross negligence in the design of the parking lot. Therefore, we find that the standard of gross negligence applies to the wrongful death action brought by appellants.

{¶24} The Ohio Supreme Court has defined gross negligence as follows:

{¶25} "An early Ohio Supreme Court case defined 'gross negligence' as the 'failure to exercise any or very slight care.' *Johnson v. State* (1902), 66 Ohio St. 59, 67, 63 N.E. 607, 609. See, also, *Cleveland, C., C. & I. Ry. Co. v. Elliott* (1876), 28 Ohio St. 340, 356-357; *Payne v. Vance* (1921), 103 Ohio St. 59, 133 N.E. 85. Prosser states that gross negligence 'has been described as a failure to exercise even that care which a careless person would use.' Prosser & Keeton, Law of Torts (5 Ed.1984) 212, Section 34." *Thompson Elec. v. Bank One, Akron, N.A.* (1988), 37 Ohio St.3d 259, 265,525 N.E.2d 761.

{¶26} Appellants did not present evidence from which reasonable minds could conclude that appellee failed to exercise any or very slight care. Appellants' expert, John Messineo, disagreed with the recent trend of big box department stores toward curbless entries. He testified in his deposition that he would have placed 6-8" curbs and bollards placed every 5 ½ feet across the length of the front of the store, but he never testified that the type of curbless entrance designed by appellee in this case rose to the level of gross negligence. However, he also recognized that curbs present a tripping

hazard and the most likely reason for a curbless entry is to prevent trip-and-fall accidents. He agreed that the risks of barrier curbs must be weighed, but never testified that the curbless design of this entry rose to the level of a failure to exercise even that level of care which a careless person would use.

{¶27} Further, the evidence demonstrated that appellee had marked the concrete pedestrian sidewalk adjacent to the asphalt parking lot in front of the store with three red bollards in front of the store entrance, yellow "no vehicle" pavement markings, white crosswalk markings in front of the entrance crossing into the parking lot, double yellow lines for traffic, yellow "Fire Lane" markings close to the entrance, "Yield" markings painted in the traffic lanes by the crosswalk, a yellow bollard in front of the crosswalk by the store entrance with a stop sign attached to it and a pedestrian crossing sign attached above the stop sign, and a 5 MPH speed limit sign posed in the traffic area separating the lot from the pedestrian sidewalk. The area was clearly marked as an area for pedestrians only.

{¶28} Reasonable minds could only conclude that appellee exercised at least slight care in the design of the sidewalk and the design did not rise to the level of gross negligence. The court therefore did not err in granting summary judgment on the wrongful death claim.The first assignment of error is overruled.

II

{¶29} In their second assignment of error, appellants argue that the court erred in finding there was no evidence that a 6-inch curb between the parking lot and the sidewalk would have prevented the accident in the instant case. This assignment of

error is moot based on our ruling in assignments I, III, IV that the entry of summary judgment was appropriate on alternative grounds.

{¶30}  The second assignment of error is overruled.

III, IV

{¶31}  In their third assignment of error, appellants argue the court erred in finding the accident in the instant case was not foreseeable.  In their fourth assignment of error, they argue the court erred in finding appellee did not breach a duty of care owed to appellants.  Because these assignments of error are closely related, we address them together.

{¶32}  A standard of ordinary negligence applies to appellants' claim for negligent infliction of emotional distress, as the wrongful death statute does not apply to that cause of action.

{¶33}  In order to establish negligence, appellants must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom.  E.g., *Pavlides v. Niles Gun Show* (1994), 93 Ohio App.3d 46, 51, 637 N.E.2d 404.

{¶34}  While the creation of a legal duty is often dependent upon the foreseeability of the consequences, an actor cannot necessarily avoid the imposition of a legal duty merely because he did not foresee the exact consequences of his actions.  Id. at 52.  The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act.  Id.

{¶35}  There is no question that appellants were business invitees on appellee Wal-Mart's premises. As business invitees, appellee Wal-Mart owed appellants a duty

"to exercise ordinary and reasonable care for [their] safety and protection." See *Cassano v. Antenan-Stewart, Inc.* (1993), 87 Ohio App.3d 7, 9, 621 N.E.2d 826, quoting *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 359, 12 O.O.3d 321, 390 N.E.2d 810, and *S.S. Kresge Co. v. Fader* (1927), 116 Ohio St. 718, 722, 158 N.E. 174. "This duty includes a responsibility to warn invitees of latent or concealed defects or perils of which the shopkeeper has, or should have, knowledge." *Green v. China House* (1997), 123 Ohio App.3d 208, 211, 703 N.E.2d 872.

{¶36} In *Skubovious v. Clough* (1996), 108 Ohio App.3d 316, 670 N.E.2d 578, the Eighth District Court of Appeals considered a case similar to the instant case. In that case, the plaintiff was struck by a car while inside a store when a car drove over a sidewalk. The plaintiff in that case argued that the use of steel bollards and/or precast parking curbs would have prevented the accident. The Court of Appeals held that an automobile being driven across a sidewalk and into a building was an unusual incident, and not one a reasonable person would have anticipated. Id.

{¶37} In the instant case, while there is always a risk of an errant vehicle striking a person in a parking lot, appellants presented no evidence that appellee had experienced problems with the design of the parking lot in the instant case or that appellee had previous accidents at the store in the area of the curbless entry. Appellants' expert Messineo testified that it was not foreseeable that cars would travel in excess of 50 miles per hour in a parking lot. Ronald Thayer, the accident reconstructionist, testified that Bescanon was traveling 48-55 miles per hour with at least some degree of control over the vehicle and accelerated into the child, making no effort to brake the vehicle. Reasonable minds could only conclude that it was not

foreseeable that a vehicle would travel into the curbless entry at a high rate of speed and continue to accelerate, resulting in a criminal conviction for aggravated vehicular homicide.

{¶38} Closely tied to the issue of foreseeability is whether the acts of Bescanon were an intervening superseding cause, therefore breaking the chain of proximate cause. This court has previously explained the issue of foreseeability and intervening, superseding cause in *Reed v. Weber* (1992), 83 Ohio App.3d 437, 441-442, 615 N.E.2d 253:

{¶39} "Negligent conduct is the 'proximate cause' of an injury if the injury is the natural and probable consequence of the conduct. *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 6 OBR 209, 451 N.E.2d 815. An injury is the natural and probable consequence of negligent conduct if the injury might and should have been foreseen. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 539 N.E.2d 614. An injury is foreseeable if a reasonably prudent person, under the same or similar circumstances, would have anticipated that injury to another was the likely result of his conduct. *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 543 N.E.2d 1188.

{¶40} "There may be more than one proximate cause of an injury. *Taylor v. Webster* (1967), 12 Ohio St.2d 53, 41 O.O.2d 274, 231 N.E.2d 870. When a defendant's conduct is negligent and the plaintiff's injury is the natural and probable consequence of that conduct, the fact that the negligence of others unites with the negligence of the defendant to cause injury does not relieve the defendant of liability. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. However, an intervening act may break the causal connection between the defendant's negligence

and an injury and thus absolve the defendant of liability if the intervening actor was a conscious and responsible agency that could or should have eliminated the hazard and the intervening cause was not reasonably foreseeable by the defendant. *Cascone, supra,* paragraph one of the syllabus (citing *Thrash v. U-Drive-It Co.* [1953], 158 Ohio St. 465, 49 O.O. 402, 110 N.E.2d 419, paragraph two of the syllabus). The test is 'whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor.' *Cascone, supra,* 6 Ohio St.3d at 160, 6 OBR at 214, 451 N.E.2d at 819 (citing *Mudrich v. Standard Oil Co.* [1950], 153 Ohio St. 31, 41 O.O. 117, 90 N.E.2d 859, and *Mouse v. Cent. Savings & Trust Co.* [1929], 120 Ohio St. 599, 167 N.E. 868). An intervening act is 'new' if it came into active operation to produce an injury after the original negligence and could not reasonably have been foreseen. See *Crawford v. Sanwardeker* (Jan. 21, 1992), Stark App. No. CA-8288, unreported, 1992 WL 12797; *Savage v. Correlated Health Serv., Ltd.* (Oct. 17, 1990), Summit App. Nos. 14491 and 14498, unreported, 1990 WL 163922, affirmed in part and reversed in part in (1992), 64 Ohio St.3d 42, 591 N.E.2d 1216; *Harris v. Middletown Radiologic Assoc.* (July 20, 1987), Butler App. No. CA86-05-069, unreported, 1987 WL 14316. An intervening act constitutes an 'independent' cause if there was no connection or cause-and-effect relationship between the original and the subsequent negligence, *i.e.,* if the intervening act was capable of producing the injury irrespective of the original negligence, was not set in motion by the original negligence, and was not simply a condition on or through which the original negligence operated to produce the injurious result. See *Mudrich, supra,*

153 Ohio St. at 38, 41 O.O. at 120, 90 N.E.2d at 863 (citing *Mouse, supra,* 120 Ohio St. at 605, 167 N.E. at 870); *Grange Mut. Cas. Co. v. Fleming* (1982), 8 Ohio App.3d 164, 8 OBR 223, 456 N.E.2d 816; see, also, *Shope v. Harlan Tel. Co.* (Dec. 9, 1991), Warren App. No. CA90-12-082, unreported, 1991 WL 261662; *Savage,* supra*; Harris,* supra."

**{¶41}** Appellants presented no evidence that Bescanon's actions concerning the operation of the vehicle at a high rate of speed into the walkway was connected or in a cause-and-effect relationship with the alleged negligence in the design of the walkway. There is no evidence to suggest that appellee could have reasonably foreseen a driver in control of a vehicle revving the engine and rapidly accelerating into a pedestrian into the walkway with no attempt to brake, an action for which he was criminally convicted.

**{¶42}** The third and fourth assignments of error are overruled.

V, VI

**{¶43}** In their fifth assignment of error, appellants argue that the trial court erred in finding appellee complied with all applicable building and design standards. In their sixth assignment of error, they argue there is a genuine issue of material fact on the issue of whether the parking lot was reasonably safe. These assignments relate to the issue of whether appellee breached a duty of care owed to appellants, and are rendered moot by our decision in assignments of error III and IV above that summary judgment was appropriate on the issue of negligence based on the unforeseeability of the actions of Bescanon.

**{¶44}** The fifth and sixth assignments of error are overruled.

VII

{¶45} In their seventh assignment of error, appellants raise numerous issues, many of which they raised earlier in their brief.

{¶46} Appellants argue there is a genuine issue of fact regarding whether appellee complied with building and design standards and whether the parking lot was reasonably safe. These claims have been found to be moot earlier in this opinion. They also argue there is an issue of fact as to whether the actions of Bescanon were foreseeable, which we considered and rejected in assignments of error three and four above.

{¶47} Appellants next argue there is a dispute of fact as to whether the danger was open and obvious. A business owner has no duty to protect his customer from conditions that are known to the customer or that are so obvious and apparent that the customer may reasonably be expected to discover them and protect himself against them. *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, paragraph one of the syllabus (known as the open and obvious doctrine). When a hazard is open and obvious, the nature of the hazard itself serves as the warning. Id.; *Shuman v. Detroit Diesel* (Dec. 6, 1999), Stark App. No. 1999CA00101, 2000 WL 1632. In the instant case, it was obvious that the walkway adjacent to the parking lot did not have curbs and did not have bollards across the entire length of the entrance. Appellant Katie Lawrence recognized that she and Civanna were walking on a sidewalk that did not have barrier curbs or bollards. The court therefore did not err in finding the condition was open and obvious.

**{¶48}** Appellants next argue there is a disputed fact as to whether Besancon's actions were provoked by the design of the parking lot.

**{¶49}** The provision of R.C. 2125.01 quoted earlier in this opinion operates to bar a wrongful death action brought against the owner or operator of a premises for a death caused by the violent act of a third person while on the premises unless (1) the *cause* proximately resulted from the gross negligence of the owner or operator, or (2) the cause was *provoked* by the owner or operator's act or omission. *Monnin v. Fifth Third Bank of Miami Valley, N.A.* (1995), 103 Ohio App.3d 213, 228, 658 N.E.2d 1140. "To 'provoke' is: 'To excite; to stimulate; to arouse; to irritate, or enrage.' Black's Law Dictionary (5 Ed.1990) 1225. Whether provocation has occurred looks to the act which is alleged to be provocation and to the result it creates, not to the purposes or motivation of the person who offers the alleged provocation. Thus, the provocation may be intentional or it may be inadvertent. R.C. 2125.01 expresses no restriction as to either kind for a wrongful death action founded on premises liability. Therefore, the act or acts which provoke the cause of death may be negligent as well as intentional for purposes of R.C. 2125.01." Id.

**{¶50}** There is no evidence in the instant case that the design of the parking lot provoked Besancon's actions. There is no evidence as to why Besancon drove up into the pedestrian walkway, killing Civanna. Besancon said that he could not remember the accident and merely testified that if he had been in his right mind, he would not have been traveling 40-50 mph in front of the store. Contra to appellants' argument, there is no evidence that Wal-mart's parking lot design created a "drag strip" which provoked the accident. The evidence and photos of the site show numerous markings and signage

designed to warn drivers to slow down because they are traveling in an area where pedestrians may be crossing, as indicated earlier in this opinion. Reasonable minds could not conclude that appellee provoked Besancon's wrongful act.

{¶51} Appellants argue next that there are disputed facts as to whether appellee was grossly negligent in the parking lot design and whether Besancon's acts were an intervening, superseding cause of Civanna's death. These claims have been raised and rejected earlier in this opinion.

{¶52} Appellants argue there is a genuine issue of material fact as to whether Civanna was conscious following the accident. Appellants rely on the statement of Noel Christian in his affidavit that Civanna survived and was conscious for up to a minute after being struck. This evidence contradicts all other witness testimony at the scene and Noel's own earlier deposition testimony that he was not present when she was struck but was in the back of the Wal-mart store and when he saw her she was not moving or breathing. However, we need not reach the issue of whether Civanna retained consciousness as required to support a survivorship claim because we have found summary judgment appropriate on the issues of both negligence and gross negligence.

**{¶53}** The seventh assignment of error is overruled.

**{¶54}** The summary judgment of the Holmes County Common Pleas Court is affirmed.

By: Edwards, J.

Gwin, P.J. and

Farmer, J. concur

_____

_____

_____

JUDGES

JAE/r0516

[Cite as *Christian v. Wal-Mart Stores East, L.P.*, 2011-Ohio-3512.]

IN THE COURT OF APPEALS FOR HOLMES COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| NOEL D. CHRISTIAN, ADMR., et al., | : | |
| | : | |
| Plaintiffs-Appellants | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| WAL-MART STORES EAST, LP, | : | |
| et al., | : | |
| | : | |
| Defendants-Appellees | : | CASE NO. 11CA002 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Holmes County Court of Common Pleas is affirmed. Costs assessed to appellants.

_____

_____

_____

JUDGES