DECISION AND JUDGMENT ENTRY
This is an accelerated appeal from the judgment of the Lucas County Court of Common Pleas which granted summary judgment to defendants-appellees, Teresa Swolsky and Park West Management. For the reasons set forth herein, we affirm the decision of the trial court.
On September 12, 1994, appellant, Frank J. Geiner, Jr., sustained injuries from a fall from a roof located at 2340 Woodville Road, Northwood, Lucas County, Ohio. On the date of Geiner's fall, Teresa Swolsky was the lessee of said property and Park West Management provided all management operations for the property. The property is owned by Ohio Turnpike Motels, Inc., and has been subject to a lease which began in 1976.
The original lease was between Ohio Turnpike and Hyman Swolsky. The lease was assigned to Joseph Swolsky, Hyman's son, in 1985 and, pursuant to a divorce settlement, was later assigned to Teresa Swolsky in 1993. Park West Management's involvement with the property began in 1985 with the assignment of the lease to Joseph Swolsky. Park West, which is owned, in part, by Joseph Swolsky, continued its management of the property after the 1993 assignment.[1]
The building is divided into three rental units. Closest to Woodville Road is the Murray's Discount Auto parts store ("Murray's"). The second unit is subleased by Daystar Church as a bingo hall and the third, or rear unit, is vacant. The incident which is the subject of this case occurred over the vacant unit.
Appellant, Frank Geiner, began his career in the roofing business in 1946. As part-owner of All Phase Roofing Sheet Metal ("All Phase"), he first inspected the entire roof of the building in 1992. Appellant was called to the property due to several leaks in the Murray's and bingo hall sections of the roof. Because he was called to the location due to leaks in the roof he surveyed the sections from the inside first. Appellant also surveyed the inside of the vacant unit and identified all the leaks he could find. He noted that there was no electricity at the time he went in and that the unit had been empty a long time and was deteriorating. A lot of the ceiling was laying on the floor.
During the same inspection, appellant walked over all three sections of the roof. He noticed a sway or dip in the vacant unit roof on the left side of the gutter and felt that it was unsafe to walk in that area. Appellant did not observe any sways or dips over the Murray's or bingo hall sections of the roof.
The bingo hall roof was repaired first. Similar to the repairs over the bingo hall, the repairs of the roof over the vacant unit included removal of the tar and gravel and "ston[ing]" it back. Where the dip in the roof was, appellant built it up with roof insulation. The Murray's roof was completely replaced.
In 1993, after the initial repairs had been completed and at the request of Park West appellant, on two occasions, walked over the entire roof, took measurements and provided a written estimate for replacement of the roof. Appellant advised that the back portions of the roof needed to be replaced due to its age and general condition.
Appellant was called by Park West to the property on September 12, 1994. The purpose of the call was to again assess the condition of the roof. Upon arrival, appellant met Teresa Swolsky for the first time. She had requested that Park West arrange the meeting so appellant could explain to her exactly what needed to be done. (Since her acquisition of the property eighteen months earlier she had not been in the vacant unit or on the roof.) Appellant and Teresa were unable to go inside the vacant unit that day because the key was missing.
Appellant, Teresa Swolsky, the subtenant for the bingo hall, and an employee of All Phase all proceeded to the roof. Appellant testified that he observed that the roof looked like it was swaying again but that the rest of the roof looked good. When appellant traversed approximately forty feet onto the vacant unit his right leg fell through the roof up to his groin. While trying to get off that portion of the roof, appellant fell again up to his armpits. Appellant sustained injuries which required hospital treatment and subsequent surgeries.
On September 12, 1996, appellant commenced the instant action naming Ohio Turnpike Motels, Inc., Park West Management and Teresa Swolsky as defendants. The complaint alleged that: the parties were negligent in failing to maintain the premises in a safe manner; they knew or should have known of the defective or dangerous condition; they were negligent or reckless in failing to warn of the dangerous and defective condition; they concealed the defective condition; and they caused building code violations.
On May 21, 1999, appellees filed their motion for summary judgment. The motion relied on the depositions of Teresa Swolsky, Frank Geiner and Diane Rowe and the lease agreement. Appellant filed his memorandum in opposition on September 22, 1999, and a reply was filed on September 30, 1999. On October 22, 1999, the trial court granted the appellees' motion. Appellant then timely filed this notice of appeal as to the judgment in favor of Teresa Swolsky and Park West. Appellant did not appeal the decision with respect to Ohio Turnpike Motels, Inc.
In his appeal, appellant raises the following assignments of error:
 "I. The Trial Court committed prejudicial error by granting Defendant Teresa Swolsky's Motion for Summary Judgment.
 "II. The Trial Court committed prejudicial error by granting Defendant Park West Management's Motion for Summary Judgment."
In reviewing a grant of summary judgment, this court must apply the same standard as the trial court. Lorain Natl.Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted where there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
In his first assignment of error, appellant argues that the trial court erred when it determined that Teresa Swolsky (and Park West) did not have superior knowledge of the condition of the roof and, accordingly, owed a duty to appellant to warn him of such condition.
For purposes of this appeal, the parties do not dispute that appellant was an invitee. An invitee is, generally, a "business" visitor who is "on the premises of another for purposes in which the possessor of the premises has a beneficial interest."Scheibel v. Lipton (1951), 156 Ohio St. 308, paragraph one of the syllabus. An owner or occupier owes an invitee the duty to exercise ordinary and reasonable care, which includes maintaining the premises in a reasonably safe condition and warning the invitee of latent or concealed defects of which the owner or occupier has or should have knowledge. Id. at 323.
The owner or occupier of a premises, however, is not an insurer of the invitee's safety while on those premises. Howardv. Rogers (1969), 19 Ohio St.2d 42, paragraph two of the syllabus. Rather, an owner's liability to an invitee for negligence in failing to render the premises reasonably safe for the invitee, or failing to warn him of dangers thereon, must be predicated upon a superior knowledge concerning the dangers of the premises to persons going thereon. Debie v. Cochran Pharmacy-Berwick, Inc.
(1967), 11 Ohio St.2d 38, 40. Additionally, where negligence revolves around the existence of a hazard or defect, notice, either actual or constructive of such hazard or defect, is a prerequisite to the duty of reasonable care. Heckert v. Patrick
(1984), 15 Ohio St.3d 402, 405.
In the instant case, the particular dangerous condition that appellant alleges appellees failed to warn him of was the fact that the rear unit had been without heat since the late 1970's or early 1980's. This fact, appellant claims, would have impacted his decision on how to inspect the roof. Appellees conversely contend that appellant's long-standing knowledge of the general poor condition of the roof combined with his expertise in the roofing business negates appellees' potential liability. This court agrees.
Appellant claims that the lack of heat over the vacant unit significantly contributed to the dry-rot of the roof's substructure which he claims caused his fall. However, appellant fails to provide any evidence in support of such contention. Appellant was aware of differences in the general condition of the adjacent bingo hall roof and the vacant unit. In 1992 when appellant entered the vacant unit to inspect for leaks, he noted that a lot of the ceiling was lying on the floor. He was aware of the fact that the building had been empty a long time, was deteriorating, and that "there was no electrical in the place or anything at that time." He also noted that there was a sway or dip in the roof which was not present over the bingo hall or Murray's. He stated that it was unsafe to walk in the area of the sway or dip.
Appellant stated that the only way to determine whether the wood under the tar and gravel surface needed replacement was to tear the roof off. However, prior to his fall appellant did know that the roof needed to be replaced and had provided appellees two written estimates.
Appellees, on the other hand, knew that the vacant unit was in deplorable condition and that the unit had been without utilities for a number of years. They were also aware that the roof needed to be replaced.
Based upon our review of the record and, in particular, comparing the relative knowledge and expertise of the parties, we cannot say that appellees had superior knowledge of the condition of the roof and were negligent in failing to disclose such condition to appellant. The fact that the unit was without utilities for at least ten years prior to the incident does not mean that appellees should be charged with the knowledge that such condition would cause the roof to deteriorate more rapidly than the other roofs. Appellant was aware that the unit had been vacant for a long time and that, at least in 1992, he knew that the building was without electricity or "anything at that time." Further, according to appellant himself, the only way to determine the condition of the wood under the surface of the roof was to rip the roof off. Therefore, even if appellees had conducted regular inspections of the property, they would have been unable to discover the condition of the roof absent the assistance of appellant or another roofer. Appellant's first assignment of error is not well-taken.
In appellant's second assignment of error, he argues that a genuine issue of fact exists regarding Park West's amount of control over the subject property. Park West contends that it did not have the type of possession or control necessary to trigger premises liability.
The Second Appellate District succinctly provides the prerequisites for recovery under the theory of premises liability:
 "For purposes of premises liability, the Restatement of Torts defines a `possessor' as `a person who is in occupation of the land with intent to control it * * *.' Restatement of the Law 2d, Torts (1965) 170, Section 328E. Possession and control are therefore two required elements of premises liability. `The control necessary as the basis for tort liability implies the power and the right to admit people to the premises and to exclude people from it and the substantial exercise of that right and power.' Mitchell v. Cleveland Elec. Illum. Co. (1987), 30 Ohio St.3d 92, 94.
"The quantum of control necessary for premises liability is one that is physical and actual, and not one that is merely legal or theoretical. The ability of the entity in control of the property to protect property or people from foreseeable harm triggers the duty. `Liability is an incident of occupation or control of the premises.' Beaney v. Carlson (1963) 174 Ohio St. 409, 411 * * *."Monnin v. Fifth Third Bank of Miami Valley, N.A. (1995),103 Ohio App.3d 213, 222.
Diane Rowe, the Park West employee responsible for the management of the Woodville property at the time of the incident, testified in her deposition that she had authority from Teresa Swolsky to contract for any necessary repairs that were under $500. Anything over that amount would have to be preapproved. Rowe also stated that Park West did not have check signing authority on behalf of Swolsky. Upon review of the relationship between appellees, we find that the nature and extent of Park West's "control" over the premises was derived solely from its verbal agreement with Teresa Swolsky. Absent such agreement, Park West would have no relationship with the property whatsoever. Accordingly, Park West's contact with the Woodville Road property did not rise to the level of "possession and control" necessary to trigger liability. Monnin, supra. Appellant's second assignment of error is not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Mark L. Pietrykowski, J., Peter M. Handwork, J., Melvin L. Resnick, J., CONCUR.
[1] Park West's management duties, relative to the Woodville Road property, include receiving and recording rent payments and contracting for necessary repairs.