OPINION *Page 2 
{¶ 1} Defendant-appellant John P. Besancon, Jr. appeals his conviction and sentence entered by the Holmes County Court of Common Pleas, on one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a); and one count of vehicular homicide, in violation of R.C. 2903.06(A)(3)(a), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On January 29, 2007, the Holmes County Grand Jury indicted Appellant on the aforementioned charges. The trial court appointed attorney Jeffrey Kellogg to represent Appellant. At Appellant's arraignment on February 8, 2007, Attorney Kellogg requested leave to file a written plea of not guilty by reason of insanity. Attorney Kellogg also raised the issue of Appellant's competency to stand trial. The trial court continued the matter pending receipt of the psychological evaluations. On February 15, 2007, Appellant entered a plea of not guilty by reason of insanity, and requested a competency examination.
 {¶ 3} Dr. James Karpawich, a psychologist with District Five Forensic Diagnostic Center, filed his competency report on April 10, 2006. Therein, Dr. Karpawich found Appellant competent to stand trial. Dr. Karpawich also filed a report relative to his psychological evaluation of Appellant. Dr. Karpawich found Appellant was not legally sane at the time of the fatal collision. The State filed an objection and motion to strike Dr. Karpawich's "NGRI" opinion. The State argued the report did not comply with R.C. 2901.01(A)(14), which sets forth the standard in Ohio for determining whether an *Page 3 
individual is "not guilty by reason of insanity" relative to a charged offense. The trial court conducted a competency hearing on April 19, 2007, after which it found Appellant competent to stand trial. The trial court subsequently conducted a hearing on the State's objections to Dr. Karpawich's "NGRI" opinion. Following the hearing, the trial court ordered the State to provide Dr. Karpawich with additional background materials with which the doctor could review his opinion. On August 7, 2007, Dr. Karpawich filed an updated and revised "NGRI" opinion, finding Appellant did not meet the legal standard of being legally insane at the time of the offense.
 {¶ 4} Appellant underwent a second "NGRI" evaluation with Dr. Jeffrey Smalldon, a psychologist in Columbus, Ohio. Dr. Smalldon found Appellant was not legally sane at the time of the fatal collision. The State filed a motion to reject and strike Dr. Smalldon's "NGRI" opinion, asserting such did not comply with statutory law. The trial court scheduled the State's motion for hearing on the morning of the trial, October 31, 2007. At that time, Appellant withdrew his not guilty by reason of insanity plea, which rendered the State's motion moot. Thereafter, the trial commenced.
 {¶ 5} The following evidence was adduced at trial. During the afternoon of August 28, 2006, Appellant drove his 2006, six speed, manual transmission, V-6 172 horsepower engine Hyundai Tiburon into the parking lot of the Millersburg, Ohio Wal-Mart. Entering the parking lot, Appellant traveled in an east to west direction in front of the building, rapidly accelerating the vehicle. Witnesses observed Appellant maneuver the vehicle thereby avoiding another vehicle and several pedestrians. Thereafter, Appellant drove the vehicle left of center into the eastbound lane, and onto the sidewalk *Page 4 
in front of the building, striking and fatally injuring Civana Christian before crashing into the building. During this time, Appellant traveled over six hundred feet. Appellant suffered multiple severe traumatic injuries, including a closed head injury. Appellant, who was hospitalized for months, has no memory of his actions in the Wal-Mart parking lot.
 {¶ 6} June Franks testified she was at the Millersburg Wal-Mart on the afternoon of August 28, 2006. As she exited her vehicle and walked toward the entrance doors, she heard a loud roar coming from her left. When asked to describe the loud roar, Franks recalled, "It was an orange car and it just sounded like the accelerator had been pushed all the way to the floor and it made me stop because I thought `Oh, my goodness, who's coming so fast.' And so I made a turn and looked to the left and saw a car coming." Transcript at 82. Franks waited on the sidewalk because she believed if she walked into the travel lane she would be in the path of the car.
 {¶ 7} Franks watched the vehicle veer to the left, avoiding a collision with a vehicle stopped in the westbound lane. The vehicle subsequently hit a yield sign on the sidewalk immediately outside the entrance doors of the Wal-Mart. As Franks continued to watch the vehicle, she saw a little girl running down the sidewalk at the same time the vehicle was traveling on the sidewalk. The next thing Franks saw was the vehicle hit the little girl, causing the child to fly into the air. Franks watched the vehicle collide into the Wal-Mart building, and then heard a woman scream. Franks noted the entire time she watched the vehicle the speed remained constant and she never saw any brake lights illuminated. Franks estimated the speed of the vehicle at 50 *Page 5 
to 60 mph/hour. Although Franks observed a person behind the steering wheel she could not tell whether the individual was a man or woman. Franks added the driver was sitting upright behind the wheel.
 {¶ 8} Bobbie Kendall was at the Millersburg Wal-Mart at approximately 3:00pm on August 28, 2006. As Kendall walked towards the entrance doors, she heard a noise, which she described as a "roar of an engine; something out of the ordinary". Tr. at 99. Kendall turned to determine from where the noise was coming and observed an orange sporty vehicle speeding through the parking lot. She stopped in her tracks and watched as the vehicle hit a yield sign and crashed into the building. As the vehicle hit the building, Kendall saw "something flip end over end". Tr. at 102. She subsequently learned the "something" was a little girl. When asked to describe what she heard throughout the incident, Kendall stated it sounded like the gas pedal floor. Kendall was able to see a driver sitting upright behind the steering wheel. However, she could not determine whether the driver was male or female.
 {¶ 9} Elizabeth O'Conner, a Wal-Mart employee, had finished working her shift on August 28, 2006, but had returned to the store to purchase a few items. As O'Conner exited the Wal-Mart and walked toward the parking lot, she heard the engine of a vehicle "going to full rev like it was shifting." Tr. at 111. O'Conner heard a second rev as the car accelerated and traveled toward her. As vehicle traveled past her, she yelled at the driver. She saw the car start to veer into the opposite lane and head towards the building. O'Connor saw the vehicle hit a little girl. She ran inside the Wal-Mart and instructed employees to call 911. When she ran outside and towards the child, she could tell the girl was already dead. *Page 6 
 {¶ 10} At the time of the accident, Appellant was enlisted in the United States Marine Corp, stationed in North Carolina. Appellant left the Marine base in North Carolina, without permission and traveled to Ohio, several days before the accident. Appellant had previously served a deployment in Iraq. In July, 2006, while on maneuvers, Appellant experienced a heat related incident for which he received medical treatment, but was not hospitalized. Following the fatal accident on August 28, 2006, Appellant gave a number of interviews to police investigators and psychologists. Appellant informed the various interviewers he had received combat related injuries while serving in Iraq, including shrapnel and a concussion-type injury caused by explosive devices. No medical or military records, which verified such incidents or injuries, were offered at trial. Appellant also informed police and psychologists to whom he spoke, he had experienced various blackouts, following the July 17, 2006 heat related incident including one while he was driving from North Carolina to Ohio days before the accident. The evidence revealed Appellant did not have either a pre-existing neurological diagnosis or psychological diagnosis prior to August 28, 2006.
 {¶ 11} Ron Thayer, an accident reconstructionist, analyzed the scene of the accident, including taking measurements and photographs, and performing speed and distance calculations. Thayer opined Appellant was "actively" operating his motor vehicle. Thayer explained the physical evidence and the information developed through documents and reports in the instant case were not consistent with the physical and documentary evidence in cases he had investigated in which a person was passed out while operating a vehicle. Thayer added, based upon his training and experience, a vehicle would not travel over six hundred feet without the driver being actively in control. *Page 7 
 {¶ 12} After hearing all the evidence and deliberations, the jury found Appellant guilty of aggravated vehicular homicide and vehicular homicide. The State elected to have Appellant sentenced on the aggravated vehicular homicide count. The trial court conducted a sentencing hearing on December 20, 2007, and imposed a term of imprisonment of three years. The trial court also suspended Appellant's driver's license and driving privileges for the remainder of his life.
 {¶ 13} It is from this conviction and sentence Appellant appeals, raising as his sole assignment of error:
 {¶ 14} "I. APPELLANT HAS BEEN DENIED HIS DUE PROCESS RIGHT AND OTHER CONSTITUTIONAL RIGHTS TO A FAIR TRIAL DUE TO INEFFECTIVENESS OF APPELLANT'S TRIAL COUNSEL."
 I {¶ 15} In his sole assignment of error, Appellant maintains he was denied his due process rights and right to a fair trial based upon ineffective assistance of trial counsel.
 {¶ 16} The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 17} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly *Page 8 
deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id .
 {¶ 18} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing there is a reasonable probability but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id .
 {¶ 19} Appellant submits trial counsel was ineffective for failing to call Dr. Smalldon as an expert witness. Dr. Smalldon, a psychologist who evaluated Appellant, had concluded Appellant was most likely experiencing a seizure or seizure-like incident, i.e., a blackout, at the time of the accident. Additionally, Appellant contends trial counsel was ineffective for failing to call a witness to testify he had suffered a seizure while driving from North Carolina to Ohio, just days before the accident.
 {¶ 20} Assuming, arguendo, trial counsel's performance was deficient, Appellant has failed to establish he was prejudiced thereby. The State called a number of parking lot witnesses. Three witnesses in particular, June Franks, Elizabeth O. Conner, and Bobbie Kendall, testified to the high rate of speed at which the vehicle was traveling and the fact Appellant appeared to be consciously controlling the vehicle. These witnesses heard the shifting of the manual transmission of Appellant's vehicle and observed the vehicle swerve, avoiding a parked car, a car traveling in the opposite direction, and a concrete post. *Page 9 
 {¶ 21} We find even if the expert witness had testified Appellant had suffered some type of seizure and/or blackout, there was not a reasonable probability the jury would have accepted such explanation as the testimony of the eyewitnesses as well as accident reconstructionist Ron Thayer provided sufficient, competent evidence to establish Appellant was consciously controlling the vehicle. Further, had trial counsel presented the testimony of the proposed witnesses, the jury would have had an additional reason to find Appellant guilty. If Appellant had suffered prior blackouts, including one while driving days before the accident, the jury could certainly find him reckless on August 28, 2006, when he decided to drive his vehicle. Accordingly, we cannot find Appellant was prejudice by trial counsel's failure to present the testimony suggested by Appellant. Having failed to establish prejudice, Appellant cannot satisfy the second prong of theStrickland test.
 {¶ 22} Appellant's sole assignment of error is overruled.
 {¶ 23} The judgment of the Holmes County Court of Common Pleas is affirmed.
Hoffman, P.J., Wise, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Holmes County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1