[Cite as *Cunning v. Windsor House, Inc.*, 2023-Ohio-352.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| PATRICK P. CUNNING, ESQ., | CASE NOS. 2022-T-0021 |
| | 2022-T-0050 |
| Plaintiff-Appellee, | |
| | Civil Appeals from the |
| - vs - | Court of Common Pleas |
| | |
| WINDSOR HOUSE, INC., et al., | |
| | Trial Court No. 2019 CV 00115 |
| Defendant-Appellant. | |

## O P I N I O N

Decided: February 6, 2023
Judgment: Affirmed in part, reversed in part, and vacated in part

*Timothy J. Cunning*, Scullin & Cunning, LLC, 940 Windham Court, Suite 4, Youngstown, OH 44512 (For Plaintiff-Appellee).

*Donald J. Richardson*, *Shannon R. Lear*, *Jay C. Rice*, and *Madison L. Leanza*, Bonezzi Switzer Polito & Hupp Co., LPA, 1300 East Ninth Street, Suite 1950, Cleveland, OH 44114 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} This case arises from a nursing home fall suffered by Annette Bush ("Ms. Bush"), that resulted in a cervical spine injury and her death five days later. A jury returned a verdict in favor of appellee, Patrick P. Cunning ("Mr. Cunning"), the administrator of Ms. Bush's estate and representative of her beneficiaries (the "estate"), and against appellant, Windsor House, Inc. ("Windsor House"), the skilled nursing facility. The jury awarded the estate $50,000 for Ms. Bush's "pre-death pain and suffering," $15,803.13 for Ms. Bush's "past economic damages" (a stipulated amount), and $5,000

for daughter Leslie Flanders' ("Ms. Flanders") "damages." A $500,000 award of damages for violation of Ohio's Nursing Home Residents' Bill of Rights ("NHRBR") "to compensate for the injuries proximately caused by the negligence of" Windsor House was made in a separate finding. The jury also returned a general verdict in favor of the estate. The trial court granted Windsor House's motion for a directed verdict on the issue of punitive damages and dismissed the jury. The trial court granted the estate's posttrial motion for prejudgment interest and denied Windsor House's motion for judgment notwithstanding the verdict ("JNOV") and/or a new trial.

{¶2} Windsor House raises four assignments of error on appeal, first contending that the trial court committed prejudicial error by denying its motions for directed verdict and its motion for JNOV and/or a new trial because the estate's claim for a violation of the NHRBR was based on the same conduct and resulting injury as its negligence claim, thus allowing a double recovery.

{¶3} Second, Windsor House contends the trial court committed prejudicial error by separately instructing and submitting jury interrogatories relating to the estate's claim for relief based upon a violation of the NHRBR.

{¶4} Third, Windsor House argues the trial court failed to apply the compensatory damages caps in R.C. 2323.43(A)(2) to the jury's award of damages for Ms. Bush's pre-death pain and suffering ($50,000) and the violation of the NHRBR ($500,000).

{¶5} Last, Windsor House contends the trial court erred by granting the estate's motion for prejudgment interest because it did not hold an oral evidentiary hearing before finding it failed to make a good faith effort to settle.

2

{¶6}    After a careful review of the record and pertinent law, we find Windsor House's first, second, and third assignments to be without merit.  A review of the jury verdict and interrogatories reveals that the jury did not award a double set of compensatory damages.   Rather, the jury awarded $70,803.13 in "economic and noneconomic damages" on the estate's survivorship claim and $500,000 in general damages on the estate's wrongful death claim.   While the trial court erred in its determination that the NHRBR allows for additional recovery of damages apart from potential punitive damages under the circumstances of this case, its conclusion to not disturb the jury's verdict and its award of damages were correct.

{¶7}    The estate was—and is—permitted to pursue multiple theories of recovery under its statutory claims, i.e., survivorship and wrongful death.  Further, we agree with Windsor House that under one set of operative facts, a double recovery of compensatory damages is not permitted.  However, from a plain reading of the jury's verdict and the jury interrogatories, that is not what occurred in this case.  Moreover, the trial court was correct in its conclusion that the compensatory damages cap for noneconomic damages of medical claims pursuant to R.C. 2323.43(A)(2) does not apply to the jury's $500,000 award on the estate's wrongful death claim.  Regarding the damages awarded under the survivorship claim, which is a "medical claim," the $50,000 noneconomic damages awarded on the estate's survivorship claim is well below the $250,000 cap in R.C. 2323.43(A)(2).

{¶8}    Windsor House's fourth assignment of error has merit insofar as our review of the record reveals that we are unable to determine whether the trial court erred in its finding that Windsor House failed to make a good faith effort to settle since all that was

3

before the trial court were the motions and briefs of the parties. Neither party, including the estate in its initial motion for prejudgment interest, submitted an affidavit or other evidentiary materials evidencing offers of settlement. Thus, we reverse and vacate the trial court's judgment granting the estate prejudgment interest.

{¶9} The judgments of the Trumbull County Court of Common Pleas are affirmed in part, reversed in part, and vacated as to its award of prejudgment interest against Windsor House.

## Substantive and Procedural History

{¶10} In January 2019, Mr. Cunning, on behalf of Ms. Bush's estate and her beneficiaries, filed a complaint in the Trumbull County Court of Common Pleas alleging claims of medical malpractice, wrongful death, survivorship, violations of R.C. 3721.13, (the NHRBR), respondeat superior, and negligence against Windsor House, as well as several of Ms. Bush's providers (nurses and doctor), who were later dismissed.

{¶11} The complaint alleged that in January 2018, Ms. Bush suffered an unwitnessed fall in the early morning hours while a resident at Windsor House. She was found lying face-down on the floor, with an abrasion to her forehead and a "bump" on the back of her head. The doctor at Windsor House examined Ms. Bush and indicated she was sitting upright and answering questions appropriately. He did not order x-rays, scans, or any other diagnostic testing, and he did not provide her with any medication to decrease her pain. Five hours later, Ms. Bush was admitted to the emergency department, where she was diagnosed with a fractured C2 vertebrae and a skull fracture. Due to the severity of her injuries, she was transferred to another hospital. Ms. Bush died five days later.

4

### *The Jury Trial*

**{¶12}** The case was tried to a jury in October 2021.

**{¶13}** Ms. Bush's beneficiaries—her daughter, Ms. Flanders, son-in-law, Scott Flanders, and their children, Jesse, Thomas, and Adelaide—testified to the circumstances surrounding Ms. Bush's death. Ms. Flanders, in particular, described her close relationship with her mother, her grief and guilt at her mother's passing, and the pain and suffering her mother experienced in the days between the fall and her death.

### *Expert Witnesses*

**{¶14}** The estate offered the testimony of two experts regarding the standards of care, Dr. David Kennedy ("Dr. Kennedy") and Jacquelyn Diamond ("Ms. Diamond"). Ms. Diamond is a registered nurse who also served as the director of nursing at two nursing home facilities.

**{¶15}** Dr. Kennedy opined based upon a reasonable degree of medical certainty that Ms. Bush's death resulted from complications of the cervical spinal fracture injury caused by the fall.

**{¶16}** During her testimony, Ms. Diamond explained to the jury that for each resident in a skilled nursing facility, an interdisciplinary team consisting of the medical director, the director of nursing, as well as individuals in charge of various therapies and activities conducts an assessment, which includes a safety and risk of falls assessment. As the resident's needs change, the care plan changes accordingly.

**{¶17}** Ms. Diamond opined that Windsor House breached the standards of care regarding falls prevention. Ms. Bush fell six times during the 15 months she was a resident at Windsor House. Each time, interventions were put in place; however, they

5

were the same interventions that had not prevented Ms. Bush from falling safely. Thus, in her opinion, more tools should have been utilized to prevent a fall from the bed, such as a perimeter mattress, an enabler, a long pool noodle to define the edges of the bed for the resident, a fall mat, moving the bed itself against a wall, and/or using a low bed.

{¶18} Ms. Diamond also opined that the standard of care for an unwitnessed fall when a resident experiences head trauma is to send the resident to the hospital immediately. The standard of care also includes an obligation to reduce the rate or the severity of the injuries. She explained this is especially important in cases like Ms. Bush, where the resident suffers from osteoporosis.

{¶19} Ms. Diamond further testified that Ms. Bush was not sent to the hospital until five hours after her fall. The facility doctor evaluated her approximately fifty minutes after the fall. In addition, Ms. Bush's blood pressure, which was taken every fifteen minutes, was quite high, while her heart rate continued to go down, indicating she should have been sent to the hospital immediately for a suspected spinal cord or head trauma. Ms. Diamond noted Ms. Bush ate a full breakfast, and afterward, while in the television lounge, a nurse noticed her face was swelling, which prompted Windsor House to send Ms. Bush to the emergency department at the local hospital.

{¶20} The defense offered testimony from two witnesses, Cathy Seese, the director of nursing for the Windsor Health facility, and defense expert, Rachel Reynolds, a certified nurse practitioner.

### *Jury Instructions, Interrogatories, and Verdict*

{¶21} The jury was instructed, inter alia, as to negligence and proximate cause; the nursing home negligence standard of care; the general instructions relating to medical

6

claims; damages, including economic and non-economic loss, loss of consortium; and wrongful death; as well as an instruction on the NHRBR (Jury Instruction No. 24). Windsor House objected only to the NHRBR instruction.

{¶22} The jury was given eight interrogatories, which were based on negligence (whether Windsor House breached the standard of care, in what respect, whether the breach was the proximate cause of Ms. Bush's death, and the amount of damages) and the NHRBR (whether Windsor House failed to provide adequate nursing care, whether the violation of the NHRBR resulted from a negligent act or omission of Windsor House, whether that act was a proximate cause of any injury or death, and damages), as well as a general verdict.

{¶23} Answering Jury Interrogatory No. 1 and No. 3, seven of the eight jurors concluded by a preponderance of the evidence that Windsor House breached the standard of care with respect to the care and treatment of Ms. Bush and that the breach was a proximate cause of her death. When asked to specifically identify the breach, the same seven jurors answered, "Jury Instruction #13-Nursing Home Negligence Standard, Jury Instruction #16-Forseeability, and Jury Instruction #19-Test of Negligence is Not Hindsight."

{¶24} Six of those same seven jurors completed Jury Interrogatory No. 4, in which they were asked to state "what amount to compensate for injuries proximately cause by the defendant"; specifically the amount "which you award to the Estate of Annette Bush that represents past economic damages, and the amount that represents past non-economic damages"; in other words, the survivorship claim damages.

{¶25} The jurors awarded:

7

1. Annette Bush's Pre-death pain and suffering from January 23, 2018 to January 28, 2018: $ 50,000.00

2. Annette Bush's Past Economic damages (stipulated): $ 15,803.13

3. Leslie Flanders' damages: $ 5,000.00

4. Jesse Flanders' damages: $ 0

5. Thomas Flanders' damages: $ 0

6. Adelaide Flanders' damages: $ 0

Please state the total amount of damages awarded to Estate of Annette Bush.

This total must be the sum total of the damage amounts stated above: $ 70,803.13

{¶26} Answering Interrogatory Nos. 5 through 7, those six jurors also found by a preponderance of the evidence that Windsor House violated Ms. Bush's rights under the NHRBR "by failing to provide adequate nursing care" and that such violation "resulted from a negligent act or omission of Windsor House." Those jurors concluded that Windsor House's "negligent act or omission was the proximate cause of Ms. Bush's injury, death, or loss to person or property." Interrogatory No. 8 as to damages asked:

You will now be asked what amount to compensate for the injuries proximately caused by the negligence of Defendant.

NOTE: ALL JURORS MAY PARTICIPATE AND ANSWER THIS INTERROGATORY, REGARDLESS OF WHETHER THEY ANSWERED THE PREVIOUS INTERROGATORIES.

Please state the amount of damages, if any, which you award to the Estate of Annette Bush that represents damages.

Please state the total amount of damages awarded to Estate of Annette Bush. $ 500,000.00

8

Case Nos. 2022-T-0021, 2022-T-0050

Seven jurors signed a general verdict form finding for the plaintiff and against Windsor House.

## *Motions for Directed Verdict and JNOV*

{¶27} The trial court denied Windsor House's various motions for directed verdicts and its motion for JNOV and/or a new trial concerning proximate cause and the NHRBR.[1] Relevant to this appeal, Windsor House argued that the jury improperly awarded separate compensatory damages under two theories of recovery for the same alleged conduct, i.e., wrongful death and violation of the NHRBR rights. Secondly, Windsor House argued that the estate failed to introduce any expert testimony regarding the NHRBR. Lastly, Windsor House argued that the trial court erred in failing to apply the compensatory damages cap in R.C. 2323.43(A)(2).

## <u>*Double Recovery of Compensatory Damages*</u>

{¶28} In its judgment entry denying Windsor House's motion for JNOV and/or a new trial, the trial court rejected Windsor House's double-recovery-of-compensatory-damages argument, declining to "interpret the [NHRBR] to be an alternative method of recovery." The trial court determined that the NHRBR explicitly provides for recovery of compensatory damages under R.C. 3721.17 and that "there is no language in the statute that prohibits an additional recovery under the common law." The court further found that the NHRBR provides additional protections to nursing home residents and that the legislature created an independent claim for relief allowing for additional recovery.

---

1. After Windsor House filed an appeal, we remanded for the trial court to rule on the estate's motion for prejudgment interest and Windsor House's motion for JNOV and/or a new trial. The trial court issued one judgment entry granting the estate's motion and denying Windsor House's motion. Windsor House then filed the instant appeal.

9

Case Nos. 2022-T-0021, 2022-T-0050

### *Expert Evidence Addressing the NHRBR*

**{¶29}** Next, the trial court found that the estate did present evidence that Ms. Bush received inadequate nursing care, which resulted in her death, and that that failure was a clear violation of the NHRBR. Thus, the trial court determined that the jury was appropriately instructed on the NHRBR claim and, upon review of the evidence, that the jury concluded Windsor House violated Ms. Bush's rights under the statute.

### *Compensatory Damages Cap*

**{¶30}** Lastly, the trial court found that the compensatory damages cap set forth in R.C. 2323.43(A)(2) for medical claims did not apply since this case was a wrongful death action, and the statute specifically excludes wrongful death actions. *See* R.C. 2323.43(G)(3). Moreover, the trial court found the NHRBR does not provide any reference to R.C. 2323.43 or the applicability of the compensatory damages cap to NHRBR claims. *See* R.C. 3721.17.

### *Prejudgment Interest*

**{¶31}** The estate filed a motion for prejudgment interest, alleging that Windsor House failed to negotiate a settlement in good faith. Windsor House, in turn, filed a brief in opposition, arguing there was no evidence of bad faith, i.e., there was no evidence that it failed to cooperate fully in discovery, failed to rationally evaluate the risk of potential liability, and/or unnecessarily delayed the proceedings, and that it made a good faith settlement offer of $100,000 as a counteroffer to the estate's request for $250,000 on the day of trial. There was no evidentiary hearing, and neither party attached an affidavit or other evidentiary quality material to their motions, briefs, or replies.

Case Nos. 2022-T-0021, 2022-T-0050

**{¶32}** In its judgment entry granting the estate's motion for prejudgment interest, the trial court reviewed that according to Windsor House, the estate initially demanded $750,000. In response, Windsor House offered $75,000. The trial court found that despite an opportunity to do so prior to trial, Windsor House made no attempts to settle after the initial demand until the estate reduced its demand to $250,000 on the morning of trial. Finding Windsor House failed to make a good faith effort to settle, the trial court awarded the estate prejudgment interest at the statutory rate from "the date on which [the estate] filed the pleading on which the judgment, decree, or order was based to the date on which the judgment, decree, or order was rendered from January 13, 2019 to February 11, 2022."

**The Appeal**

**{¶33}** Windsor House raises four assignments of error for our review:

**{¶34}** "[1.] The trial court committed prejudicial reversible error in denying Defendant's three Motions for Directed Verdict and Judgment Notwithstanding the Verdict, or in the Alternative, Motion for New Trial on Plaintiff's claim for a violation of the Ohio Nursing Home Residents' Bill of Rights ("ONHRBR") as the alleged violation was a 'medical claim' under R.C. 2305.113(E)(3) and was based on the same conduct and resulting injuries to Annette Bush that was the basis for Plaintiff's medical negligence claim, thereby allowing Plaintiff to recover two sets of damages for Defendant's same breach of the standard of care.

**{¶35}** "[2.] The trial court committed prejudicial reversible error in instructing and submitting interrogatories to the jury on Plaintiff-Appellee's claim for a violation of the Ohio Nursing Home Residents' Bill of Rights.

11

Case Nos. 2022-T-0021, 2022-T-0050

{¶36} "[3.] The trial court committed reversible error in failing to apply the compensatory damages cap set forth in R.C. 2323.43(A)(2) to the jury's award of damages to the Estate of Annette Bush for Ms. Bush's pre-death pain and suffering and the violation of Ms. Bush's rights under the Ohio Nursing Home Residents' Bill of Rights in the total amount of $550,000.

{¶37} "[4.] The trial court committed prejudicial reversible error in granting Plaintiff-Appellee's motion for prejudgment interest."

### Motions for Directed Verdict and JNOV

{¶38} We address Windsor House's first, second, and third assignments of error together since they concern the jury's award of damages on the estate's survivorship and wrongful death claims. Windsor House contends the trial court erred in denying its motions for a directed verdict and JNOV because the estate is, in effect, receiving two sets of compensatory damages for the same injury under two different theories of recovery, i.e., negligence and a violation of Ms. Bush's rights under the NHRBR. Windsor House also argues that the trial court erred in instructing and submitting interrogatories to the jury to determine whether Ms. Bush's NHRBR rights were violated because the estate failed to introduce any expert evidence on the issue and because it allowed a double recovery of compensatory damages. Lastly, in its third assignment of error, Windsor House contends the trial court erred in failing to apply a compensatory damages cap pursuant to R.C. 2323.43(A)(2) to the jury's award of damages for Ms. Bush's pre-death pain and suffering and for violation of the NHRBR.

12

Case Nos. 2022-T-0021, 2022-T-0050

## Standard of Review

{¶39} "The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support [their] side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976).

{¶40} We review a trial court's rulings on a motion for JNOV and a motion for a directed verdict de novo since those determinations only present questions of law. *See Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Lake No. 2012-L-145, 2014-Ohio-2875, ¶ 48; *Groob v. KeyBank,* 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 14; Civ.R. 50.

{¶41} Alternatively, Windsor House requested a new trial pursuant to Civ.R. 59(A). In deciding a motion for a new trial based on the weight of the evidence, the trial court must weigh the evidence and pass upon the credibility of witnesses. The trial court's weighing of the evidence, however, differs from that of the jury in that it is restricted to determining whether manifest injustice has been done and whether the verdict is, therefore, manifestly against the weight of the evidence. *McWreath v. Ross*, 179 Ohio App.3d 227, 2008-Ohio-5855, 901 N.E.2d 289, ¶ 68 (11th Dist.).

13

Case Nos. 2022-T-0021, 2022-T-0050

**{¶42}** It is well settled in Ohio that "where the inadequacy of the verdict is so gross as 'to shock the sense of justice and fairness,' or where the amount of the verdict cannot be reconciled with the undisputed evidence in the case, or where it is apparent that the jury failed to include all the items of damage making up plaintiff's claim, the judgment entered on such verdict may be set aside by a reviewing court as being manifestly against the weight of the evidence and contrary to law." *Sherer v. Smith*, 85 Ohio App. 317, 322-323, 88 N.E.2d 426 (6th Dist.1949).

**{¶43}** As an appellate court, we review a trial court's judgment on a Civ.R. 59 motion for a new trial under an abuse-of-discretion standard. *McWreath* at ¶ 69. We will adhere to the principle that the decision regarding a motion for a new trial rests within the sound discretion of the trial court and will not be disturbed upon appeal unless there has been an abuse of that discretion. *Id. See also Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraph one of the syllabus (where a trial court is authorized to grant a new trial for a reason that requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

**{¶44}** To the extent, however, that the trial court's decision granting or denying a new trial under Civ.R. 59(A) presents a question of law, we review the decision de novo. *Rohde* at paragraph two of the syllabus ("Where a new trial is granted by a trial court, for reasons which involve no exercise of discretion but only a decision on a question of law,

14

the order granting a new trial may be reversed upon the basis of a showing that the decision was erroneous as a matter of law").

### *Wrongful Death and Survivorship Actions*

{¶45} After a careful review of the record, we determine that Windsor House and the trial court, and for that matter the estate, appear to have confused, or at least inartfully intermingled, multiple theories of recovery with the specific items of damages awarded for two underlying claims for relief, i.e., the estate's wrongful death and survivorship claims. But despite this, we find the jury followed the law as instructed by the trial court on each claim, answered each interrogatory appropriately in light of those instructions, and most importantly, did not award double damages for each claim.

{¶46} Even though usually litigated in a single proceeding and brought by the same nominal party, wrongful death and survival claims are independent, distinct claims that belong to separate individuals. *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, ¶ 17; *In re Estate of Craig*, 89 Ohio App.3d 80, 84, 623 N.E.2d 620 (12th Dist.1993). A wrongful death claim belongs exclusively to the decedent's beneficiaries and is meant to cover pecuniary and emotional loss suffered by those beneficiaries as a result of the death. *Peters* at ¶ 10; *Craig* at 84. By contrast, a survival claim is simply the action the decedent could have brought for the injuries he suffered prior to his death and is generally for the benefit of the estate. *Peters* at ¶ 10; *Craig* at 84. In this case, the estate's survival action was pleaded under multiple theories—a common law negligence claim, a statutory medical claim (medical malpractice), and a statutory claim for violations of the NHRBR.

15

{¶47} While the same act may give rise to survivorship and wrongful death claims, the claims for relief are separate and distinct and are intended to accomplish very different purposes. While both claims are brought in Mr. Cunning's name as the decedent's personal representative, there are, in essence, two plaintiffs in this case seeking recovery for two separate, although related, causes of action. *White v. Moody*, 51 Ohio App.3d 16, 24, 554 N.E.2d 115 (10th Dist.1988).

{¶48} Actions for wrongful death and survivorship are statutory and operate as exceptions to the common-law rule that death terminates all claims for relief that otherwise might be brought. "Wrongful death" and "survivorship" are not claims for relief, as such, but are *statutory actions by which certain claims for relief may be brought*, *Monnin v. Fifth Third Bank of Miami Valley, N.A.*, 103 Ohio App.3d 213, 227, 658 N.E.2d 1140 (2d Dist.1995), i.e., negligence and negligent violations of a patient's rights pursuant to the NHRBR.

{¶49} Civ.R. 8(A) provides: "Relief in the alternative or of several different types may be demanded." Civ.R. 8(E)(2) states: "A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. * * * A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds." *See Iacono v. Anderson Concrete Corp.*, 42 Ohio St.2d 88, 92, 326 N.E.2d 267 (1975) ("Civ.R. 8(E)(2) permits alternative or hypothetical pleading, or even the use of inconsistent claims * * *.").

{¶50} We agree with Windsor House that a double recovery of compensatory damages is not permitted. A plaintiff, however, is permitted to proceed under different

16

theories of recovery, so long as only one set of damages is awarded. *Depompei v. Santabarbara*, 8th Dist. Cuyahoga No. 101163, 2015-Ohio-18, ¶ 48 (There was no error in allowing the appellant to present alternative theories where he was permitted a single recovery).

**{¶51}** Other courts have tackled a similar situation where the plaintiff pleads separate counts setting forth different bases for damages arising out of one act. *See Brenner Marine, Inc. v. George J. Goudreau, Jr. Trust*, 6th Dist. Lucas No. L-93-077, 1995 WL 12118, *5 (Jan. 13, 1995) (plaintiff is entitled to only single recovery of damages even though such plaintiff may be entitled to plead alternative theories of recovery); *Castle Nursing Homes, Inc. v. Sullivan*, 5th Dist. Holmes No. 95-CA-541, 1996 WL 752789, *5 (Nov. 21, 1996) (trial court should not have accepted jury's verdict on both claims because they were alternate theories for a single recovery).

**{¶52}** Similarly, in this case, the estate was permitted to bring claims of medical negligence, wrongful death, survivorship, negligent violation of Ms. Bush's NHRBR rights, respondeat superior, and negligence, provided one set of damages was awarded for the damages suffered and expenses incurred by the decedent while she was living, along with the loss of consortium suffered by her children while she was living, and one set of damages compensating the beneficiaries for the injury and loss to them resulting from the wrongful death of the decedent, along with reasonable funeral and burial expenses. Moreover, in order for the estate to seek punitive damages, it had to set forth a claim for relief under the NHRBR for injuries and/or death caused by violations of that statute, inasmuch as punitive damages are not recoverable in traditional medical negligence and wrongful death actions.

17

**{¶53}** Further, we agree with Windsor House that under the circumstances of this case, the NHRBR does not provide for additional recovery (apart from punitive damages, which the trial court found was not warranted in this case); that is, an additional amount on top of those awarded for the survivorship and wrongful death claims. But despite Windsor House's argument to the contrary, that is not what occurred in this case.

**{¶54}** Our analysis is informed by the explanation and synopsis of the NHRBR in *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9:

**{¶55}** "R.C. 3721.13 enumerates 3[3] subsections that outline a nursing home resident's rights, which include the right to a safe and clean living environment; to be free from physical, verbal, mental, and emotional abuse; to adequate and appropriate medical treatment and nursing care; to confidential treatment of personal and medical records; to be free from certain physical or chemical restraints; to exercise all civil rights; to observe religious obligations and participate in religious activities; and to voice grievances without discrimination or reprisal. The administrator of the home is required to prominently post a copy of the nursing home patients' rights as listed in R.C. 3721.13." (Footnotes omitted.) *Id.* at ¶ 10; *see* R.C. 3721.13(A)(1)-(33).

**{¶56}** "There are three alternative remedies when a nursing home resident's rights under R.C. 3721.10 to 3721.17 have been violated: (1) the resident may file a grievance with a grievance committee established pursuant to R.C. 3721.12(A)(2), (2) anyone who believes that a resident's rights have been violated may file a report with the department of health, and (3) a resident or the resident's sponsor may file a civil lawsuit against any person or home committing the violation." (Footnotes omitted.) *Id.* at ¶ 11, citing R.C. 3721.17(A), (B), and (I)(1).

18

**{¶57}** The Supreme Court further noted that "'[t]he right to private action was included in the statute specifically because those who drafted the statute distrusted the Department of Health.'" *Id.*, quoting Note, *H.B. 600: Ohio's Bill of Rights for Nursing Home Patients*, 5 U.Dayton L.Rev. 507, 523 (1980), fn. 108. In *Cramer*, the Supreme Court of Ohio found the former version of R.C. 3721.17(I)(1) specifically abrogated governmental immunity and created a claim for relief for residents of unlicensed county nursing homes against a political subdivision for violations of the NHRBR. *Id.* at syllabus.

**{¶58}** The civil action allows "[t]he plaintiff * * * [to] recover compensatory damages based upon a showing, by a preponderance of the evidence, that the violation of the resident's rights resulted from a negligent act or omission of the person or home and that the violation was the proximate cause of the resident's injury, death, or loss to person or property." R.C. 3721.17(I)(2)(a). Punitive damages are also available. *See* R.C. 3721.17(I)(2)(b).

**{¶59}** R.C. 3721.17 does not expressly or impliedly state that it abrogates common law negligence claims. Following general principles of statutory construction, the General Assembly will not be presumed to have intended to abrogate a common-law rule unless the language used in the statute clearly shows that intent. *State ex rel. Morris v. Sullivan*, 81 Ohio St. 79, 90 N.E. 146 (1909), paragraph three of the syllabus. Thus, in the absence of language clearly showing the intention to supersede the common law, the existing common law is not affected by the statute but continues in full force. *Carrel v. Allied Prods. Corp.*, 78 Ohio St.3d 284, 287, 677 N.E.2d 795 (1997). "'There is no repeal of the common law by mere implication.'" *Id.*, quoting *Frantz v. Maher*, 106 Ohio App. 465, 472, 155 N.E.2d 471 (2d Dist.1957).

19

{¶60} The remedies under R.C. 3721.17 (a survivorship action based on a medical claim) and a wrongful death action are not inconsistent. R.C. 3721.17 provides a new and additional remedy for survivorship and wrongful death, which includes punitive damages.

{¶61} While one could envision a scenario in which there are multiple injuries at issue in the same case—one resulting from ordinary negligence and another from a negligent violation of the NHRBR or a violation of a right afforded by the NHRBR that does not result in bodily injury—in this case, the estate's claim for medical negligence and violations of the NHRBR both concern the same injury. Thus, it would seem the cumulative remedy rule of statutory construction applies. "Where a statute which creates a new right prescribes the remedy for its violation, the remedy is exclusive; but when a new remedy is given by statute for a right of action existing independent of it, without excluding other remedies already known to the law, the statutory remedy is cumulative merely, and the party may pursue either at his option." *Zanesville v. Fannan*, 53 Ohio St. 605, 42 N.E. 703 (1895), paragraph two of the syllabus (Finding a statute authorizing injured parties' recovery of compensatory damages against railroads in addition to claims against municipal corporations, who have a duty to keep streets and highways nuisance free).

{¶62} While the trial court ruled that the NHRBR allows for an additional (as opposed to an alternate) remedy, any decision on the interpretation of the NHRBR in that regard is premature, most fundamentally because those circumstances are not presented in this case since both theories of recovery concern the same operative facts.

20

{¶63} This, however, does not end our analysis. As our review of the jury's award of damages revealed, the jury did not award two sets of compensatory damages. The jury interrogatories reveal the jury followed the trial court's correct instructions of law regarding the nursing home negligence standard of care (the medical negligence claim), even specifically identifying by number the instructions on which they based their decision, including the following instructions:

{¶64} "**<u>JURY INSTRUCTION NO. 13</u>**

{¶65} "**<u>NURSING HOME NEGLIGENCE STANDARD OF CARE</u>**

{¶66} "A nursing home is responsible for injuries proximately caused by the negligence of its employees, including nursing personnel, acting within the scope of their employment. A nursing home is not responsible for the negligent actions of independent contractors and non-employee healthcare providers, such as doctors, hospitals or EMTs.

{¶67} "A nursing home must exercise the same degree of care, skill, and diligence that a reasonably careful nursing home offers under the same or similar circumstances, considering the level of services or skills offered by the nursing home, and what the nursing home knew or should have known about the resident's physical condition, mental capacity, and ability to care for himself/herself.

{¶68} "Before you can find for the Plaintiff, you must find by the greater weight of the evidence that a Defendant was negligent, and that this negligence was a proximate cause of the Decedent's death."

{¶69} "**<u>JURY INSTRUCTION NO. 20</u>**

{¶70} "**<u>DAMAGES</u>**

21

Case Nos. 2022-T-0021, 2022-T-0050

{¶71} "GENERAL. If you find for Plaintiff, you will decide by the greater weight of the evidence an amount of money that will reasonably compensate Plaintiff for the actual injury proximately and directly caused by the Defendant.

{¶72} "COMPENSATION. In deciding this amount, you will consider the 'economic loss' and 'noneconomic loss,' if any, proximately and directly caused by the Plaintiff's injury.

{¶73} "ECONOMIC LOSS. 'Economic loss' means any of the following types of financial harm:

{¶74} "(a) all wages, salaries, or other compensation lost as a result of the Plaintiff's injury.

{¶75} "(b) all expenditures for medical care or treatment, rehabilitation services, or other care, treatment, services, products, or accommodations incurred as a result of Plaintiff's injury; and

{¶76} "(c) any other expenditure incurred as a result of the Plaintiff's injury other than attorney's fees incurred by the Plaintiff.

{¶77} "COLLATERAL SOURCE: INSURANCE. In deciding damages, you must not consider whether either party had insurance. Any assumption that either party had or did not have insurance is not relevant and may be wrong. You must not add to or subtract from any award based on any assumption regarding insurance. You must resolve all issues presented to you only on the evidence admitted and the law in these instructions.

{¶78} "NONECONOMIC LOSS. 'Noneconomic loss' means harm other than economic loss that results from the Plaintiff's injury, including, but not limited to, pain and

22

suffering; loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education; disfigurement; mental anguish; and any other intangible loss.

{¶79} "CONSIDERATIONS IN DETERMINATION OF 'NONECONOMIC LOSS' In determining an award for 'noneconomic loss,' you shall not consider any of the following:

{¶80} "(A) evidence of the Defendant or Defendant's alleged wrongdoing, misconduct, or guilt;

{¶81} "(B) evidence of the Defendant or Defendant's wealth or financial resources; and

{¶82} "(C) all other evidence that is offered for the purpose of punishing the Defendant, rather than offered for a compensatory purpose."

{¶83} The jury also followed the correct charge as to damages for the survivorship claim when it explicitly listed the amounts of "past" or pre-death economic and non-economic damages (as opposed to damages for wrongful death) in their answers to Interrogatory No. 4, awarding $50,000 for Ms. Bush's conscious pain and suffering until her death, the stipulated amount for economic damages of $15,803.13 (presumably the expense of her last illness), and $5,000 for Leslie Flander's damages for her loss of consortium before her mother's death (although not identified as such in the form), for a total of $70,803.13 for the survivorship claim.

{¶84} The jury was correctly charged as to wrongful death damages, as follows:

{¶85} "**JURY INSTRUCTION NO. 21**

{¶86} "**DEATH, COMPENSATORY DAMAGE**

23

{¶87} "If you find for the Plaintiff, you will determine what sum of money will compensate the beneficiaries for the injury and loss to them resulting by reason of the wrongful death of the Decedent.

{¶88} "In determining damages suffered by reason of the wrongful death, you may consider all factors existing at the time of the Decedent's death. The factors that you may consider include:

{¶89} "a. loss of support from the reasonably expected earning capacity of the Decedent;

{¶90} "b. loss of services of the Decedent;

{¶91} "c. loss of the society of the Decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education suffered by the surviving spouse, minor children, parents, or next of kin;

{¶92} "d. loss of prospective inheritance to the Decedent's heirs at law at the time of her death;

{¶93} "e. the mental anguish incurred by the surviving spouse, minor children, parents, or next of kin.

{¶94} "In addition to an award of compensatory damages, you may make an award for the reasonable funeral and burial expenses, if these expenses are established by the evidence."

{¶95} At Interrogatory Nos. 6 and 7, the jury determined that there was a violation of the decedent's rights in the failure to provide adequate nursing care resulting from a negligent act or omission of Windsor House and that the negligent act or omission was a

24

proximate cause of the injury, death or loss to person or property. At Interrogatory No. 8 the jury determined damages for the estate's claim to be $500,000.

**{¶96}** To complete the analysis of the first assignment of error it is necessary to explain the separate but closely related concepts of general verdicts, jury interrogatories, and jury instructions. This court examined these concepts in great detail in *7471 Tyler Blvd., LLC v. Titan Asphalt & Paving, Inc.*, 2020-Ohio-5304, 162 N.E.3d 851 (11th Dist.):

**{¶97}** "The function of the jury, as trier of fact, is to make findings of fact determinative of any claim for relief or defense to it. *Robb v. Lincoln Publishing (Ohio), Inc.*, 114 Ohio App.3d 595, 623, 683 N.E.2d 823 (12th Dist.1996).

**{¶98}** "Civ.R. 49(A) requires trial courts in a civil jury trial to use '[a] general verdict, by which the jury finds generally in favor of the prevailing party.' The Supreme Court of Ohio has held that '[c]ompliance with Civ.R. 49(A) is mandatory. A trial judge *must* require the jury to return a general verdict in a civil action for damages.' (Emphasis added.) *Schellhouse v. Norfolk & W. Ry. Co.*, 61 Ohio St.3d 520, 575 N.E.2d 453 (1991), syllabus." *Id.* at ¶ 80-81. In this case, the jury completed a general verdict form.

**{¶99}** "Civ.R. 49(C) mandates that '[s]pecial verdicts shall not be used.' A 'special verdict' is 'a statement by the jury of the facts it has found—in essence, the jury's answers to questions submitted to it; the court determines which party, based on those answers, is to have judgment.' *Phillips v. Garfield Hts.*, 85 Ohio App.3d 413, 418, 620 N.E.2d 86 (8th Dist.1992), citing *Black's Law Dictionary* 1560 (6th Ed.1990). This prohibition was written into the civil rules in response to the many difficulties encountered with special verdicts in pre-rule civil practice. *Schellhouse* at 524, citing 1970 Staff Note to Civ.R. 49." *Id.* at ¶ 83.

25

### *Interrogatories*

{¶100} "In place of the special verdict, the drafters provided, in Civ.R. 49(B), for the use of interrogatories in combination with the general verdict as a means of attaining the perceived advantages of the special verdict while avoiding its disadvantages. *Id.* According to its drafters, Civ.R. 49(B) was 'designed * * * to broaden the function of the interrogatory to the jury.' 1970 Staff Note to Civ.R. 49." *Id.* at ¶ 84.

{¶101} "The Supreme Court of Ohio has held that '[t]he purpose of an interrogatory is to "test the jury's thinking in resolving an ultimate issue so as not to conflict with its verdict."' *Freeman v. Norfolk & W. Ry. Co.*, 69 Ohio St.3d 611, 613, 635 N.E.2d 310 (1994), quoting *Riley v. Cincinnati*, 46 Ohio St.2d 287, 298, 348 N.E.2d 135 (1976). Stated differently, the 'essential purpose to be served by interrogatories is to test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial.' *Cincinnati Riverfront Coliseum, Inc. v. McNulty Co.*, 28 Ohio St.3d 333, 336-37, 504 N.E.2d 415 (1986); *see also Colvin v. Abbey's Restaurant, Inc.*, 85 Ohio St.3d 535, 538, 709 N.E.2d 1156 (1999) ('The purpose of using interrogatories is to test the general verdict. * * * The overall goal is to have the jury return a general verdict and interrogatory answers that complement that general verdict')." *Id.* at ¶ 85.

### *Relationship to Instructions and General Verdict*

{¶102} "The second paragraph of Civ.R. 49(B) provides that '[t]he court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict.' *Id.* at ¶ 97.

26

{¶103} "The Supreme Court of Ohio has found this provision to mean that the trial court 'should be careful to see that the interrogatories, as phrased, are consistent with and responsive to the general instructions to the jury.' [*Ragone v. Vitali & Beltrami, Jr. Inc.,* 42 Ohio St.2d 161, 166, 327 N.E.2d 645 (1975)], quoting 1970 Staff Note to Civ.R. 49." *Id.* at ¶ 98.

{¶104} "The drafters of Civ.R. 49 recognized that instructions and interrogatories serve different functions, writing that 'inasmuch as a jury with proper instructions by the court decides determinative or ultimate issues (Issues which dispose of the case) in its general verdict, an interrogatory to the jury is designed to test the jury's thinking in resolving a determinative or ultimate issue in the case * * *'. 1970 Staff Note to Civ.R. 49." *Id.* at ¶ 99.

{¶105} "The third and final paragraph of Civ.R. 49(B) details the actions a trial court must take when entering judgment on a jury verdict that is accompanied by interrogatories. *Colvin*, *supra*, at 538, 709 N.E.2d 1156. It provides:

{¶106} "'When the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial.'

{¶107} "The fact that answers to interrogatories may control suggests that the answering of interrogatories is even more important than the general verdict. *See Aetna*

*Cas. & Sur. Co. v. Niemiec*, 172 Ohio St. 53, 55, 173 N.E.2d 118 (1961) (construing former R.C. 2315.17)." *Id.* at ¶ 100-102.

**{¶108}** Reading the jury instruction, the answers to interrogatories, and the general verdict together, as we must, it becomes clear that the first set of damages was for the survivorship claim. It then follows that the second award in the amount of $500,000 was for the wrongful death claim. The jury also returned a general verdict in favor of the estate and against Windsor House. There is no duplication of damage awards for the various elements of damages.

**{¶109}** While we disagree with the trial court's rationale in its decision on the motion for JNOV and/or a new trial, including its reasoning that this is simply a "wrongful death case" (without reviewing all of the estate's claims) and its implied conclusion that in this case there may be a double recovery of compensatory damages under separate common law and statutory theories, i.e., survivorship and wrongful death claims and a claim for injury and death under the NHRBR, its ultimate judgment denying those motions is correct. The jury followed the correct legal roadmap set out in the instructions, and its answers to the interrogatories do not conflict with each other or with the general verdict.

**{¶110}** "[W]here the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as the basis thereof." *Agricultural Ins. Co. v. Constantine*, 144 Ohio St. 275, 284, 58 N.E.2d 658 (1944). *See also State ex rel. Carter v. Schotten*, 70 Ohio St.3d 89, 92, 637 N.E.2d 306 (1994); *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90, 658 N.E.2d 814 (1995). Thus, when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for

28

the wrong reason, because such an error is not prejudicial. *Newcomb v. Dredge*, 105 Ohio App. 417, 424, 152 N.E.2d 801 (2d. Dist.1957); *State v. Payton*, 124 Ohio App.3d 552, 557, 706 N.E.2d 842 (12th Dist.1997).

{¶111} We also note that the compensatory damages cap on noneconomic damages pursuant to R.C. 2323.43 does not apply to the jury's $500,000 wrongful death award. R.C. 2323.43 explicitly does not apply to "wrongful death actions brought pursuant to Chapter 2125. of the Revised Code." R.C. 2323.43(G)(3). Further, even if Windsor House's negligence constitutes a "medical claim," the jury's award of economic and noneconomic damages on the estate's survivorship claim is well below the compensatory noneconomic damages cap of $250,000 in R.C. 2323.43(A)(2).

{¶112} Moreover, the estate's claim that Windsor House committed a negligent violation of Ms. Bush's rights under the NHRBR was properly put forth before the jury since the evidence supported the instruction. There is no requirement that an expert witness must explicitly testify to the statute (or a violation of it). A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced. *Marshall v. Gibson*, 19 Ohio St.3d 10, 12, 482 N.E.2d 583 (1985). It is well established that a trial court should confine its instructions to the issues raised by the pleadings and the evidence. *Becker v. Lake Cty. Mem. Hosp. West*, 53 Ohio St.3d 202, 208, 560 N.E.2d 165 (1990). In Ohio, it is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Riley*, *supra*, at paragraph two of the syllabus. However, requested instructions should ordinarily be given if they are correct statements of law applicable to the facts in the case

29

and reasonable minds might reach the conclusion sought by the specific instruction. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991).

{¶113} We determine Windsor House's first, second, and third assignments of error to be without merit.

**Prejudgment Interest**

{¶114} In its fourth assignment of error, Windsor House contends that the trial court committed reversible error in granting the estate's motion for prejudgment interest because it did not hold an oral evidentiary hearing and because it found Windsor House failed to make a good faith effort to settle (particularly when Windsor House did not know the trial court would allow the estate to recover two sets of noneconomic compensatory damages and refuse to apply the statutorily mandated cap on noneconomic damages).

{¶115} "Ohio has created a statutory right to prejudgment interest." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 657, 635 N.E.2d 331 (1994). The statute, R.C. 1343.03(C)(1), states in relevant part:

{¶116} "If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows:  * * *."

{¶117} "[I]f a party meets the * * * requirements of the statute, the decision to allow or not allow prejudgment interest is not discretionary.  What is discretionary with the trial

30

court is the determination of lack of good faith." *Moskovitz* at 658. We therefore review a trial court's determination of "good faith" or lack thereof for an abuse of discretion. *Id.* Such judgments, which rely so heavily on findings of fact, will not be disturbed on appeal as being an abuse of discretion if supported by some competent, credible evidence. *Loder v. Burger*, 113 Ohio App.3d 669, 674, 681 N.E.2d 1357 (11th Dist.1996).

{¶118} "A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party." *Kalain v. Smith*, 25 Ohio St.3d 157, 495 N.E.2d 572 (1986), syllabus. "If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Id.* The latter principle must be strictly construed, however, so as to carry out the purposes of the statute—"'to encourage litigants to make a good faith effort to settle their case, thereby conserving legal resources and promoting judicial economy.'" *Moskovitz* at 657-658, quoting *Peyko v. Frederick*, 25 Ohio St.3d 164, 167, 495 N.E.2d 918 (1986).

{¶119} Thus, the burden of proof lies with the party seeking prejudgment interest. *Id.* at 659. "Accordingly, it is incumbent on a party seeking an award to present evidence of a written (or something equally persuasive) offer to settle that was reasonable considering such factors as the type of case, the injuries involved, applicable law, defenses available, and the nature, scope and frequency of efforts to settle." *Id.* "Other factors would include responses—or lack thereof—and a demand substantiated by facts and figures. Subjective claims of lack of good faith will generally not be sufficient." *Id.*

31

"[T]he burden does not include the requirement that bad faith of the other party be shown. * * * [A] party may have failed to make a good faith effort to settle even though he or she did not act in bad faith." *Id.*

{¶120} There is no requirement, as Windsor House contends, that the evidentiary hearing be oral in nature. Rather, as the Supreme Court of Ohio explained in *Pruszynski v. Reeves*, 117 Ohio St.3d 92, 2008-Ohio-510, 881 N.E.2d 1230:

{¶121} "Although the court may rely in part on its own participation during the pretrial and trial proceedings to aid in its ruling on the motion, * * * the parties have the right to a date certain for an evidentiary hearing. The trial court, however, has the *discretion to determine the nature of the evidentiary hearing* to be held, as it is in the best position to select the kind of evidence necessary to make the findings required by R.C. 1343.03(C) and determine whether an award of prejudgment interest is proper.

{¶122} "Having conducted case-management conferences, pretrials, settlement conferences, and the trial, *a court in some instances may decide that presentation of evidence by affidavits, depositions, and other documents is sufficient*; at other times, the trial court may decide that an oral evidentiary hearing is more appropriate." (Emphasis added.) *Id.* at ¶ 12-13.

{¶123} The Supreme Court adopted the reasoning of the Third District set forth in *King v. Mohre*, 32 Ohio App.3d 56, 513 N.E.2d 1366 (3d. Dist.1986):

{¶124} "'[T]he factual determinations required under R.C. 1343.03(C) are separate from and unrelated to the legal and factual determinations made at the trial on the underlying cause of action. Indeed * * * unsworn allegations of facts presented in the motion cannot constitute 'evidence' in the proper sense of the term. * * * [W]e conclude

32

that a hearing on a motion for prejudgment interest must be evidentiary in nature so as to permit a documented basis for the trial court's decision as well as to provide a meaningful record for appellate review.'" *Pruszynski* at ¶ 15, quoting *Mohre* at 58.

{¶125} In this case, it was within the trial court's discretion to hold an evidentiary and/or oral hearing, and, as required, it set a date certain for the evidentiary hearing. The parties, however, only submitted unsworn allegations, which cannot constitute "evidence" and, further, provides us with nothing to review.

{¶126} For instance, in *Forman v. Kreps*, 2016-Ohio-1604, 50 N.E.3d 1 (7th Dist.), the Seventh District vacated the trial court's award for prejudgment interest because the plaintiff did not support his motion for prejudgment interest with any evidentiary materials, nor did he create a record capable of review. *Id.* at ¶ 39. The court reasoned:

{¶127} "At first blush the absence of a transcript in this matter significantly constrains our review. The record demonstrates that the trial court held some type of hearing; apparently after the parties filed their respective briefs, the matter was set and the magistrate entertained counsels' arguments in chambers but no record was made. It was error for the magistrate to grant, and the trial court to adopt, a prejudgment interest award. [The plaintiff's] motion for prejudgment interest was unsupported by any 'affidavits, depositions or evidence' to justify an award for prejudgment interest. * * * As [the plaintiff] failed to attach any evidentiary materials to his motion at the time of original filing and failed to file any supplemental pleadings, the remaining option was to present evidence at a hearing capable of review by this Court." *Id.* at ¶ 37, quoting *Pruszynski* at ¶ 13.

{¶128} Likewise in *Howard v. HCR ManorCare, Inc.*, 2018-Ohio-1053, 99 N.E.3d 429 (2d Dist.), the Second District affirmed the trial court's denial of appellant's motion for prejudgment interest, in which it also overruled his request for discovery one day before the evidentiary hearing. *Id.* at ¶ 174. The Second District reviewed that "[n]otably, the trial court presided over the case for more than two years, and had knowledge of what had transpired, including any discovery issues and settlement discussions. As a result, the court did not act arbitrarily or unreasonably in declining to hold an oral evidentiary hearing. Consistent with *Pruszynski*, the trial court set a date certain for the hearing, and the parties could have submitted whatever information they desired prior to the hearing date." *Id.* at ¶ 184. Further, the court noted that "'[o]ften, the only way for a party to prove another party's failure to make a good faith effort to settle is by obtaining the claims file of an insurer.'" *Id.* at ¶ 185, quoting *Moskovitz* at 661. However, the appellant's right to discovery, was not unlimited, and it was not an abuse of discretion to overrule his motion for discovery one day before the evidentiary hearing, most especially where the appellant had no explanation of why he waited one day before the scheduled hearing to even mention discovery. *Id.* at ¶ 186.

{¶129} Our review of the record reveals that neither party, including the estate in its initial motion for prejudgment interest, submitted an affidavit or other evidentiary quality materials evidencing demands and offers of settlement. Thus, we are unable to determine whether the trial court erred in its determination that Windsor House failed to make a good faith effort to settle and that the estate did not fail to make a good faith effort to settle since all that was before the trial court were the motions and briefs of the parties.

{¶130} Thus, we find Windsor House's fourth assignment of error has merit in part. We reverse and vacate the trial court's judgment granting the estate prejudgment interest and remand for further proceedings on the issue of prejudgment interest.

{¶131} The judgments of the Trumbull County Court of Common Pleas are affirmed in part, reversed in part, and vacated as to its award of prejudgment interest against Windsor House. The matter is remanded to the trial court.

JOHN J. EKLUND, P.J., concurs,

THOMAS R. WRIGHT, J., concurs in judgment only in part and concurs in judgment and opinion in part, with a Concurring Opinion.

_____

THOMAS R. WRIGHT, J., concurs in judgment only in part and concurs in judgment and opinion in part, with a Concurring Opinion.

{¶132} It is unclear as to which theory of recovery the jury predicated liability on the survivorship and wrongful death claims; that is, common law negligence or the NHRBR. However, it matters not, as, for the reasons stated by the majority, instruction on both theories was permissible, supported by the evidence, and allows for the damages awarded. Also for the reasons stated by the majority, regardless of the basis of liability, Windsor has failed to demonstrate double recovery or that any damages awarded exceed applicable noneconomic damages caps. And last, the answers to the interrogatories are consistent with the general verdict. To that extent, I concur in judgment only as to the first, second, and third assigned errors. I concur in judgment and opinion on the fourth assigned error.

Case Nos. 2022-T-0021, 2022-T-0050